FREDERICK C. AREY *vs.* CITY OF NEWTON.

Middlesex.    January 21, 1889. — March 1, 1889.

Present: MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Way — Defect — Hitching Post — Violation of City Ordinance —*
*Contributory Negligence.*

A hitching post standing within the limits of a public highway, upon or near the carriageway, so as to render travel thereon in carriages unsafe, is a defect for which a city is liable to one so travelling, in the exercise of due care, who is injured by a collision with it.

A city is not liable for injuries occasioned to one travelling in a carriage in the night-time upon a narrow highway, the width of which is known to the driver, through a collision with a hitching post standing between the travelled part of the sidewalk and the carriageway, while the driver, being unable to distinguish the line of the sidewalk, in violation of a city ordinance, was driving upon the sidewalk in an attempt to pass another carriage going in the same direction.

TORT for personal injuries occasioned by an alleged defect, consisting of a hitching post, in Charles Street in Newton. Trial in the Superior Court, before *Brigham,* C. J., who allowed a bill of exceptions, which, so far as material, was as follows.

The following facts were not disputed. Charles Street was a public way leading from Auburn Street in that part of Newton called Auburndale to the Riverside station, and during certain seasons of the year was much travelled. Sidewalks had been constructed on both sides of the street by the city of Newton, but it did not appear in evidence that the sidewalks had been located of any definite width. The post in question stood within the limits of the highway in front of the residence of one Roberts. The width of the carriageway, or that portion of the street wrought for travel by carriages, was sixteen and a half feet. The evidence as to the width and condition of the sidewalk, on the side where the post stood, was conflicting.

The defendant offered evidence tending to show that the carriageway was what is called a two-track road; that the travelled part of the sidewalk, on the side of the street where the post stood, was five feet nine and five eighths inches wide; that between the sidewalk as thus constructed for travel and the edge

of the carriageway was a strip or border of grass one foot and three and five eighths inches wide, which sloped towards the carriageway; that this border of grass existed at the time of the accident, the post in question being set within it, about two inches from the edge of the carriageway; and that the sidewalk on the other side was eight feet one and one half inches wide.

The evidence of the plaintiff tended to show that the distance from the travelled path of the sidewalk to the outer edge of the post was eleven and one half inches; that at the time of the accident there was no grass on the strip; that the sidewalk had been constructed the autumn before; that the highway was travelled close to the post, and that the strip or border referred to was not grassed at the time, the space between the post and travelled part of the sidewalk being gravelled; that the post was about four feet high, of a dark color; that the accident occurred after dark, about seven o'clock P. M., on March 16, 1885; that the plaintiff and one Woodward were riding in a wagon, Woodward driving to his home on a private street leading out of Charles Street, where he had lived many months; that neither Woodward nor himself knew there was a post there; that as they drove into Charles Street and came near Roberts's house, driving at the rate of about five miles an hour, they overtook a wagon driven by one Dow, who was walking his horses; that as they came up to Dow's wagon he turned his horses to the right to enable them to get by, and Woodward turned his horse, allowing only in his judgment sufficient space to clear his wagon from that of Dow, when his wheel struck the post, throwing out the plaintiff and causing his injuries; and that the forward wheel was found locked to the post inside by the hub, the hind wheels being in the travelled way, about two feet from the strip.

The defendant introduced evidence tending to show that, at the time of the accident, Woodward was driving upon the sidewalk; but this evidence was denied by the plaintiff, Dow, and Woodward.

The following duly enacted ordinances of the city of Newton were in evidence :

"Sect. 18. No person shall ride or drive any horse, or cause the same to be ridden or driven, in any street, or over any bridge, at a pace faster than eight miles an hour. Every person having

a wagon under his care shall, when passing with the same over any street or bridge, hold the reins of his horse or horses, or be in such position as to be able at all times to restrain and govern such horse or horses.

" Sect. 28. No person shall drive, wheel, or draw any vehicle, except a child's carriage drawn by hand, or permit any horse, or any cattle, swine, or sheep, under his care, to go upon a sidewalk, or otherwise obstruct or injure any sidewalk. No person shall unnecessarily stop a vehicle, or place any other obstruction, on any street crossing, or suffer his vehicle to stand an unreasonable length of time in any street; nor shall any person drive a vehicle upon or over any hose-pipe lawfully placed in a street or in use at a fire."

Lawful penalties were attached to these ordinances.

The plaintiff requested the court to instruct the jury as follows:

" 1. If the jury find that the post was an unreasonable obstruction to the way, and that the plaintiff, while a traveller in the exercise of due care, received his injuries through said obstruction, then the plaintiff is entitled to a verdict for damages.

" 2. If the travelled part of the way was not of sufficient width to allow the safe passage of Mr. Woodward's wagon by Mr. Dow on the night in question without using a part of the sidewalk, and the night was so dark that the line of the sidewalk was not distinguishable in the exercise of reasonable care, it was not negligence on the part of Mr. Woodward, if he was otherwise in the exercise of due care, to have used a part of said sidewalk in attempting to drive by."

The judge refused to give said instructions, but among other things instructed the jury: " If the post was in the highway, and made that highway dangerous, it was a defect for which the city of Newton may be held responsible; that if the post was between the carriageway and the sidewalk, it must have been in such a situation as to have made travel by carriages on the carriageway unsafe. . . . If Woodward turned upon the sidewalk to go by, or if he was going at a speed which was in violation of the ordinances of the city of Newton, he was doing what he had no right to do, and it would be strong evidence that he was not exercising prudence and caution; the sidewalk was no

place for a carriage. . . . But if between parts of a highway properly adapted to travel by carriages, and parts of the same highway properly adapted to travel on foot, there was an obstruction which caused carriage travel on the carriageway, or foot travel on the sidewalk, to be unsafe and dangerous, such an obstruction would be a defect for which the city of Newton would be responsible to a person who, travelling with due care, was injured thereby. The practical question of this case is this: Was the post, alleged to have been the cause of injury to plaintiff, in such near and immediate relation to the carriageway of Charles Street that the carriageway was unsafe. Whether or not that post obstructed safe travel by carriage on Charles Street will depend on the width of the carriageway, and how far it would serve the purpose of carriages in passing each other."

The jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

*C. Q. Tirrell,* (*N. H. Pratt* with him,) for the plaintiff.

*W. S. Slocum,* for the defendant.

FIELD, J. The exceptions are to the refusal to give the two instructions requested. The first instruction requested was given substantially with the modification, that, if, the post was an obstruction in the carriageway, or was so near to the carriageway as to make travelling on it unsafe, then it was a defect; and this, we think, is a correct statement of the law. In the present case the carriageway was narrower than in *Macomber* v. *Taunton,* 100 Mass. 255, but this is the principal difference between the two cases. The narrowness of the part of the way wrought for carriage travel might have some bearing upon the question whether the post was so near to it as to make the carriageway unsafe, but if the post did not, under the circumstances, constitute a defect in the way intended for carriage travel, the plaintiff cannot recover.

The exceptions state that the ordinances had been duly passed, and that the penalties attached to them were lawful. Woodward had, therefore, no right to drive his wagon upon the sidewalk. If he intentionally and unnecessarily had driven it on the sidewalk, and this was a contributing cause of the injury, the plaintiff could not recover, because the defendant is not

liable if the unlawful or negligent act of a third person con-
tributed to the injury. *Rowell* v. *Lowell*, 7 Gray, 100. *Shepherd*
v. *Chelsea*, 4 Allen, 113. *Tuttle* v. *Lawrence*, 119 Mass. 276.
*Newcomb* v. *Boston Protective Department*, 146 Mass. 596.

The second request assumes that the travelled part of the way
was not of sufficient width to allow the safe passage of Wood-
ward's wagon by that of Dow, while the evidence did not sup-
port the assumption, if the words are taken literally. The
request was material only in case the jury should find that the
post rendered the part of the way wrought for carriage travel
unsafe. Undoubtedly, a person driving in a wagon on a dark
night, and attempting to pass another wagon driven in the same
direction, is more likely to go beyond the limits of the travelled
way if it is only sixteen and a half feet wide, than if it is twice
that width; still, a traveller cannot justify driving upon a side-
walk in violation of an ordinance, merely because it is convenient
in order to pass at a particular place a wagon that is driven be-
fore him. If any necessity would justify violating an ordinance
of this kind, mere convenience would not. *Commonwealth* v.
*Adams*, 114 Mass. 323.

Without considering whether an unintentional violation of
the ordinance, if it contributed to the injury, would necessarily
defeat the action, we think that evidence that Woodward, with-
out being able to distinguish where the line of the sidewalk was,
voluntarily undertook to drive by the wagon of Dow on a nar-
row street, the width of which the jury must have found was
known to him, had some tendency to show negligence on his
part. The attempt to drive by, under the circumstances proved,
may have seemed to the jury careless.

*Exceptions overruled.*