WARREN D. FISHER, Appellant, *v.* THE VILLAGE OF CAMBRIDGE,
Respondent.

In an action to recover damages for personal injuries received by plaintiff
while crossing a bridge over a stream crossed by one of defendant's
streets, the following facts appeared: The bridge had, before defend-
ant's incorporation, been erected and kept in repair by the town, within
the limits of which the village is situated. By defendant's charter its
trustees are made highway commissioners, with certain powers, but not
over highway bridges. The trustees constructed foot-bridges on either
side of the bridge in question. which were joined to the bridge so as
to substantially form a part of it, there being nothing to indicate where
one ended and the others commenced, except that the floor of the bridge
was slightly higher than that of the additions. The whole structure
appeared to be safe for general use for driving. Plaintiff did not know
that one part of the bridge was intended for foot passengers only. He
had seen people frequently drive over the parts added by defendant, and
the planks on those parts showed that teams had been continually driving
over them. The points of junction were about four feet within the curb
line of the street. In attempting to cross with a loaded truck on one of
those parts the structure gave way and plaintiff received the injuries
complained of. One of defendant's ordinances forbid driving on a side-
walk. Defendant claimed that for a violation of this and of the provis-

ion of the Penal Code (§ 652), which makes it a misdemeanor to willfully and without authority drive upon a sidewalk, plaintiff could not recover. It appeared that plaintiff drove on the sidewalk to get his truck up to a platform projecting from a store near the bridge in order to load it, and in driving off the sidewalk it was difficult for him to do so without driving on the added portion of the bridge. A motion for nonsuit. was granted. *Held*, error; that it could not be said as matter of law that plaintiff's negligence contributed to the accident.

(Argued March 14, 1892; decided April 12, 1892.)

Appeal from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made February 18, 1891, which affirmed a judgment in favor of defendant entered upon a decision of the court on trial at Circuit.

This action was brought to recover damages for personal injuries received by plaintiff in the breaking down of a bridge which was a continuation of one of defendant's streets, and over which he was driving with a truck and pair of horses.

The following is the opinion in full:

"Prior to the passage of the act incorporating defendant there had been a bridge spanning the creek which crosses Main street at nearly right angles. Main street runs about east and west. This bridge was erected and kept in repair at the expense and by the authorities of the town, within the limits of which the village was situated. The bridge was, in effect, a continuation of Main street. In 1866 the defendant was incorporated as a village and its trustees were made highway commissioners, with general power over sidewalks, roads and foot-bridges, but not over highway-bridges. Acting under their authority the trustees built what is termed a foot-bridge over the same creek. They built it by constructing on each side of this highway-bridge another bridge, and each of these bridges which they thus built was about twelve or thirteen feet wide and almost the same span as the original bridge, which was about twenty-eight feet wide. The space covered by the original highway-bridge and by these side bridges was thus about fifty-two or fifty-four feet, and was in effect of the whole width of Main street, including sidewalks. There was in this way added to the original bridge thirteen feet on each

side.   It is claimed on the part of the village that this addition was plainly a foot-bridge, intended solely for the use of foot passengers, and so known to be by the plaintiff.   The defendant further contends that it had no power to build any other than a foot-bridge, and that it was not guilty of negligence in building a foot-bridge strong enough only for foot passengers. Also that plaintiff was guilty of negligence which contributed to the injury by driving unnecessarily upon the foot-bridge when he was fully aware of its character.

" The creek which was spanned by the bridge had a course of about north and south, while the closely settled part of the village lay on the east side of the bridge.

" There was evidence in the case tending to show the following facts :  Main street had no curb at either side.   Instead of a paved gutter, there was on the south side of the street and north of the south sidewalk, a sort of gutter-way, which was a continuation of the street or road.   The road rounded gradually, being higher in the center, and the gutter was simply the edge of the road as it met the plane of the sidewalk on the south, and there was no abrupt breaking away.   It was perfectly easy for teams to drive across it one way or the other.

" Both of these foot-bridges, as has been said, joined and were built up against, and substantially formed a part of the old highway-bridge.

" The south curb line of Main street, if extended across the bridge, would take in about four feet of the north end of the foot-bridge, or in other words, the foot-bridge projected into the street line about that distance.   The balance of the foot-bridge was a continuation of the line of the south sidewalk.   The line of demarkation between the so-called foot-bridge and the highway-bridge was not distinct.   The highway-bridge was higher by the thickness of one plank (from 1 to 3 inches), than was the foot-bridge.   There was nothing else to show where one bridge ended and the other commenced.   The general appearance of the whole bridge was that it was safe for general use and for driving with whatever load was necessary.   The part the plaintiff drove on was level, or nearly so, with the old bridge; there were plank on both bridges and nothing on them but dust and dirt.   There was nothing to show where

the foot-bridge commenced and the road-bridge ended, for the line of the difference in height between the two was within the lines of the street.   The plaintiff did not know that one part was a foot-bridge only and the other part a road-bridge, although he knew that the part designated on the trial as a foot-bridge was the only place that pedestrians usually crossed, and that it was built for that purpose, that is, of furnishing pedestrians a place to cross, but both bridges were on a level and he had never heard that one part of the bridge was stronger than the other part, and from appearances one was just as safe to drive on as the other.   He did know that one part of the bridge was under the supervision of one set of men, and the other under the supervision of another set of men.   He knew that by seeing different men working on the bridge.   During the time plaintiff lived in Cambridge (a period of some years), he had seen other people frequently drive over the foot-bridge part, and it was plain to be seen teams had so driven over it.   Tracks of the wagons, marks of the horses and their droppings could be there seen on the planks.   These tracks and marks were plain to be seen on the planks at or very near the point where plaintiff went on the bridge.   And it was plain that teams had been continually driving over that part.

"Upon this evidence we think a case would have been made for the jury if plaintiff had driven along the highway and entered upon the bridge and had been injured by the falling of the foot-bridge part, consequent upon his driving upon that portion.   It would be a question for the jury whether the defendant were not guilty of negligence in building its foot-bridge so near as in appearance to make substantially an addition to and a part of the old highway bridge, without taking precautions to build it strong enough to bear the loads which persons might naturally place upon it in ignorance that it was not a part of what it seemed to be, and who were equally ignorant that it was designed only for foot passengers. Whether a plaintiff in such a case were himself guilty of any negligence, if even without absolute necessity he permitted his wagon-wheels to drop from the upper plank of the highway-bridge, the distance of an inch or two, to the lower plank

of the foot-bridge, and in consequence suffered injury by the falling of the foot-bridge, is a question which could not be determined by the judge in the affirmative. It may be entirely true that defendant had no legal right to build a highway-bridge. Its liability does not flow from the fact of its attempting to build such a bridge and in negligently construct-ing it. Its liability, if any, rests upon the fact, if it be a fact, that in executing its acknowledged and admitted power to build a foot-bridge, it has built it so close to the highway-bridge as seemingly to form a part thereof, and in such a manner as was likely to deceive anyone ignorant of the fact, and lead him to believe that in driving on the foot-bridge he was driving upon a highway-bridge, any part of which would be equal to the burden of sustaining any reasonable load that would be likely to be placed upon it.

"The liability of defendant would rest in reality upon the negligent and improper manner in which it actually built a foot-bridge.

"The defendant, however, says that the plaintiff drove along the village sidewalk on the south side of Main street, and from such sidewalk entered upon the foot-bridge of defend-ant with a team of horses drawing a loaded wagon, and while his team was on the foot-bridge the accident occurred. It would not have happened, the defendant says, but for the fact that the plaintiff drove on the village sidewalk, because it was while driving from this sidewalk that he reached the portion of the bridge where the accident occurred. It does not appear that the plaintiff could not have driven over the same portion of the bridge, even though he reached the bridge while driv-ing in the highway proper. The defendant now alleges that the plaintiff, in driving on the sidewalk from the store to the edge of the bridge, a distance of a few feet, violated a village ordinance, and also section 652 of the Penal Code.

"The village ordinance provided that any person leading or driving any horse or other animal on any of the sidewalks should be liable to a penalty of $3 for each and every offense. The Penal Code makes it a misdemeanor willfully and without authority to drive along a sidewalk.

"It appeared from the evidence that plaintiff was in the

employ of merchants who had a store near the bridge and that he drove on the sidewalk to get his wagon near a platform projecting from the store and from which he loaded his wagon with a stove to be carried somewhere in the village. In driving off the sidewalk, it was difficult for plaintiff to do so without at the same time driving his team and wagon on the portion of the bridge built by the defendant for foot passengers, and it was after he had left the sidewalk and was on the defendant's part of the bridge that the accident happened by the giving way of the bridge.

" From these facts we do not think it follows as a legal proposition that plaintiff was guilty of negligence in contributing to the injury.

"It has been sometimes held that one who violated some law or regulation intended to prevent the happening of an accident of the nature which in fact occurred, was *prima facie* guilty of negligence, and from such violation a reasonable presumption might arise that the fault, if not the sole cause, was at least a contributory cause of the disaster. Thus in *Cordell* v. *Central & Hudson R. R. R. Co.* (64 N. Y. 535), it was held that a charge that the omission to give the statutory signals at a highway crossing constituted negligence which subjected the defendant to liability for damages if the death of the plaintiff's intestate was caused thereby.

" So the non-compliance of a vessel at the time of a collision with statutory or other regulations prescribed by competent authority and intended to prevent collisions, is *prima facie* evidence of negligence, and a presumption that it caused or contributed to the happening of the accident may be permitted to be indulged in.

" In this case, however, we think the violation of the ordinance did not, within the meaning of the law, cause or contribute to the happening of the accident.

" In the first place it is entirely clear that the purpose of the ordinance was not to prevent accidents on the foot bridge. Ordinances of this nature are passed for the purpose of keeping street vehicles within their proper limits and to protect pedestrians and to preserve the sidewalks from exposure to wear and tear from horses and vehicles, for which they were

not intended. Although this bridge may be called a foot-bridge and regarded as furnishing in fact a continuation of the sidewalk at that point, yet there can be no doubt that the ordinance as to driving on the sidewalk does not cover within its terms the foot-bridge in question. A foot-bridge is not a sidewalk within the general meaning of the word. Still less would a foot-bridge which to all appearances formed part of a highway-bridge and between which and such highway-bridge there was no visible line of demarkation, be regarded as coming within the purview of language providing against the use of sidewalks by horses and carriages.

"As the ordinance did not apply to the foot-bridge, there was no violation of it in driving thereon as the plaintiff did, and there was no reasonable connection between the prior violation by driving on the sidewalk and the subsequent injury arising from driving on the foot-bridge. Although the accident happened immediately subsequent to the violation of the ordinance, it was also subsequent to the time when that violation ended. The sidewalk had been driven on, but the plaintiff had also driven off it, and although in driving off the sidewalk the plaintiff had also driven on the foot-bridge, yet they were entirely separable acts and the subsequent was not at all the necessary legal or physical consequent of the first act. The violation of the ordinance would not usually or naturally, and did not proximately cause or tend to cause the injury.

"If there had been an ordinance providing that every one driving on the highway-bridge should keep to the right, would the fact that a person drove to the left at a time when no one else was on or in sight of the bridge, be a defense to an action to recover damages sustained by the bridge going down while such person was so driving on the left side of the bridge? There would be no natural connection between the violation of the ordinance and the happening of the accident, although it might be in one sense said that if the ordinance had not been violated the accident would not have occurred. The purpose of the ordinance would be regarded, and when it was seen that its purpose was to prevent accidents from collisions and that it assumed the equal safety of both sides of the bridge so far as its ability to sustain a load was concerned, it certainly

could not be held that in driving to the left under such circumstances the person was guilty of negligence which contributed to the injury, because he thereby violated an ordinance. There must be some natural and reasonable connection, as cause and effect, between the violation of the ordinance and the happening of the accident before such violation can furnish any defense. It cannot be said to contribute to the accident unless the latter is the natural and proximate result following such violation, or unless the violation contributed in some appreciable degree as a part of the proximate cause of the injury. Here the accident was in no sense the proximate result of the violation of the ordinance, nor did its violation contribute or tend to contribute to the happening of the injury as a part of its proximate cause.

"If the plaintiff could convince the jury from the evidence in the case that defendant built its foot-bridge in such a way and in such close proximity to the highway-bridge as apparently to form a part of that structure and seemingly to be as strong as any portion thereof, and yet negligently omitted to in any way guard it from use as part of such highway-bridge, and also negligently omitted to build it strong enough to support the weight which might, under such circumstances, reasonably be expected to be placed upon it, he would be entitled to recover his damages provided he satisfied the jury that he was himself ignorant of the fact that the bridge was only a foot-bridge and not intended for the use of horses or vehicles, and there was nothing about the place which would suggest to a reasonably careful and prudent man the existence of any danger from driving on the bridge in question at the point he did and with the load which plaintiff had.

"Evidence upon these questions was given, but the learned judge thought no case for a jury was made out and, therefore, nonsuited the plaintiff.

"We think he should have another opportunity to prove his case and if the evidence then produced should tend to prove the facts above stated, the case should be submitted to the jury. For that purpose this judgment should be reversed and a new trial granted, with costs to abide the event."

*Charles M. Davison* for appellant.

*D. M. Westfall* for respondent.

PECKHAM, J., reads for reversal and new trial.
All concur.
Judgment reversed.