Freedman, J.
The action was brought to recover damages for a personal injury. On July 24, 1890, the plaintiff rode on horseback up Riverside drive to dine with some friends at Audubon Park, where he safely arrived. After dinner the plaintiff left Audubon Park at about half-past nine o’clock, rode down to Claremont, and from that point attempted to ride home by way of a bridle path on Riverside drive.
At the trial the plaintiff claimed that at Claremont there were" two bridle paths; that he took the one on his right hand as he *493 was going ; that-after riding upon it for some distance on a stiff trot, the night being dark, he struck something between One Hundred and Third and One Hundred and Fourth streets which caused him and his horse to fall; that by reason thereof he sustained personal injury, and that what he collided with was a wire fence which bad no light upon it or near it, and which was stretched clear across the bridle path upon which he was riding quite fast
The defendant, however, by a clear preponderance of evidence, established the following facts, viz.:
The plaintiff did not ride upon the bridle path, but upon a path or walk reserved for pedestrians, which ran parallel with the bridle path and between it and a heavy stone wall on the river side. There was no fence across the bridle path at any point. There was a wire fence about three feet six inches high running along the westerly side of the bridle path from One Hundred and Fourth street to Ninety-sixth street, and constituting a boundary or division fence, between the bridle path and the pedestrian walk. From One Hundred and Fourth street north to One Hundred and Twenty-first street the boundary between the bridle path and the walk was defined by a paved gutter and a bluestone curb six inches high. No rider could get upon the walk without crossing the gutter and 'curb both. Formerly there was no bridle path at all between One Hundred and Fourth and Ninety-sixth streets. The fence was erected for the purpose of extending the bridle path south from One Hundred and Fourth street. The walk having been considered unreasonably wide for the demands of pedestrians, and there being a public demand for increased bridle path facilities the walk was divided by the Department of Public Parks, having jurisdiction in the premises, into two parts, with a well-defined boundary between them so as to afford between One Hundred and Fourth and Ninety-sixth streets both a walk for pedestrians and a bridle path for equestrians, and in this way the bridle path which had existed from Claremont to One Hundred and Fourth street was continued soutli to Ninety-sixth street. In addition to the fence, the gutter and the curb spoken of, there were some guide posts indicating the patli set apart for visitors on horseback, one of which the plaintiff saw on his ride up, and near to the place of the accident, namely, at both corners of One Hundred and Fourth street, and between One Hundred and Third and One Hundred and Fourth streets, there were street lamps which, from their position, must have thrown some light on some parts of the fence. Indeed, the fact that at no point was there a fence across the bridle path was so clearly established that the learned trial judge felt bound to instruct the jury concerning it as follows, viz: “ There was no fence across this bridle path. The fence that was there was a fence that passed along the extreme west of the bridle path, and was between it (the bridle path) and the path for pedestrians only. So that the words of his (meanihg plaintiff’s) statement must be modified so as to consider that what he came against was a fence of the road, in a proper sense, that went along it.”
*494 Where, then, was there any proof of defendants’ negligence? There was nothing out of repair. There was no negligence in the construction of the fence. There was no obstruction in the bridle path. As the- fence, ran, only along the side of the bridle path, the defendants were under no duty to place lamps or lanterns upon it. There is no absolute obligation on the part of the city to light its streets. The mere existence of the fence gave no cause of action. Riverside Park, including the drive and the paths in question, was established, in pursuance of the authority conferred by chapter 496 of the Laws of 1885, and the department of public parks has by law the control and management of it. It was shown that the fence was erected pursuant to an order issued by the president of the department of public parks to the superintendent of parks. Presumably the president acted pursuant to authority conferred upon him by the board of commissioners of public parks. If there was any question about it, the evidence which was offered by the defendants upon this point should have been received, and it was error to exclude it. If there was no record evidence of it, parol evidence was admissible. Parol evidence is always admissible to show facts omitted from the record, unless the law'expressly and imperatively requires all matters to be of record and makes the record the only evidence. Dillon on Municipal Corp., 2d ed., §§ 237, 238; 4th ed., §§ 300, 301.
The case at bar is, therefore, analogous to the cases where people have been injured by driving against water hydrants, trees, hitching posts, telegraph poles, awning- posts or stepping stones situated on the sidewalk immediately adjoining the driveway. In this class of cases it has been invariably held that there was no liability on the part of the municipality. Ring v. City of Cohoes, 77 N. Y. 83 ; Dubois v. City of Kingston, 102 N. Y. 219 ; 1 St. Rep. 350; Macomber v. Taunton, 100 Mass. 255; Cushing v. Boston, 128 Mass. 330; Arey v. City of Newton, 148 Mass. 598; Wellington v. Gregsen, 31 Kans. 99.
It is a familiar rule that the question as to how much of a street shall be set aside for the driveway and how much for the sidewalk, trees, gutter, etc., etc., is, in the absence of a controlling statutory provision, matter of municipal discretion, and I cannot find that any one has ever questioned the right of a municipality to separate its walks and drives by fences. The exercise of this discretion is in the nature of a judicial act, and for this reason it is firmly established that a municipal corporation is exempt from all liability for the manner in which its officers, in good faith and within the scope of their respective powers, exercised such discretion. Mills v. City of Brooklyn, 32 N. Y. 495; Lynch v. City of New York, 76 N.Y. 60; Monk v. Town of New Utrecht, 104 N.Y. 552; 6 St. Rep. 484; Paine v. Village of Delhi, 116 N. Y. 224; 26 St. Rep. 620.
A municipal corporation does not insure the citizen against danger from works of its construction. Its obligation and duty in such respect is measured by the exercise of reasonable care and vigilance. Liability can only be predicted upon its rieglect1 or *495 misconduct. Jenney v. City of Brooklyn, 120 N. Y. 167 ; 30 St. Rep. 877.
The construction of the fence in question, so far from having been a negligent act, was a precautionary measure to prevent equestrians from getting upon the walk reserved for pedestrians and injuring the latter, and its construction near the place of the accident may be even deemed to have been a prudent act, because at and near that point there was a slight curve in the bridle path corresponding with a similar curve in the driveway at that point, and because from that point south the pedestrian walk, owing to the construction of the bridle path out of it, was quite narrow'.
For the reasons stated, the construction and maintenance of the fence in the manner described do not sustain plaintiff’s alleged cause of action.
The only point remaining to be considered, therefore, is whether, in view of the existence of the fence, the Department of Public Parks should or should not have efficiently guarded the entrance to the pedestrian walk at Claremont where the plaintiff claims he got upon it. If this involved a mere error of discretion, the defendants are not liable within the authorities already cited. To have barricaded such entrance so as to make it impossible for a man on horseback to get upon the walk would have deprived pedestrians of the use of the walk. The ground of the pedestrian walk was made hard by rolling, while the bridle path was a soft road. There were benches at intervals along the walk. There were some signs up indicating the particular use to be made of each path. There was a well-defined and substantial boundary between the two as already described. The whole arrangement was such that the Department of Public Parks might well have considered that both paths were reasonably safe for all travelersus ing ordinary care and caution,whether traveling by day or by night. Indeed it is incredible that an accident such as befell the plaintiff, could happen in the daytime to a rider using ordinary care and caution. In this respect the present case differs materially from Fisher v. Village of Cambridge, 133 N. Y. 527; 44 St. Rep. 317, in which there was actual negligence in the construction of the bridge, and a notorious public use of the bridge, to the knowledge of the plaintiff, for certain purposes, by which, together with other appearances, the plaintiff was misled in broad daylight because he did not know that as matter of fact the bridge had been built for purposes other than those for which it was permitted to be used.
In the case at1 bar, the plaintiff was acquainted with the general arrangement of the locality, for he had ridden there on prior occasions, and he admitted that he knew that there was a pedestrian walk between the bridle path and the river side. This being so, and it having been fully established that there never was more than one bridle path at any point in that locality, I cannot conceive how, in the exercise of ordinary care and caution, it was possible for the plaintiff to get upon the pedestrian walk over a curb stone six inches high in the belief that it was the bridle path, which he must have known was not shut off by any such or any *496 other obstruction, and when there was no other path or walk left between him and the heavy stone wall constituting the westerly boundary of the pedestrian walk, and then to proceed upon the said walk for about a mile without noticing the stone wall or the hardness of the road, or the benches upon it, or any of the other appearances which, it seems, should have indicated to him that he was not on the bridle path. The learned counsel for the plaintiff, in his brief, laid stress upon some testimony given by the plaintiff to the effect that some time after the accident the plaintiff examined the walk on which he had been injured, and then discovered the footprints of a horse upon it, and upon this testimony claimed that it was evidence tending to show that the defendants had permitted the said walk to be used by equestrians. The defendants fully explained how such footprints^ if they were the footprints of a horse other than the one ridden by the plaintiff, in all probability got there, and convincingly showed that such walk had never been permitted to be used by equestrians. Moreover, the plaintiff himself did not claim at the trial that on the evening of the accident he had been misled by noticing the footprints of a horse upon the said walk, and from the whole case it is perfectly clear that a rider who proceeded as the plaintiff did, without noticing the curbstone over which his horse must have stepped, and without seeing the heavy stone wall on his right, or the paved gutter and curb on his left, or the benches in his path, would not have noticed the footprints of a horse if any had been there.
It is not necessary, however, to consider the alleged contributory negligence of the plaintiff which the defendants'contend was established. It is sufficient for present purposes to hold that, upon the whole case, it was shown by a great preponderance of evidence that there was no actionable negligence on the part of the defend* ants, and that for this reason the defendants were entitled to a •dismissal of the complaint upon the merits or the direction of a verdict in their favor.
The judgment and order shall be reversed anda new trial ordered, with costs to the appellant to abide the event.
' Mo Adah, J., concurs.