## PHILIP A. MACOMBER *vs.* CITY OF TAUNTON.

In an action under the Gen. Sts. *c.* 44, § 22, against a town, for an injury resulting to a traveller from the collision of his carriage with a hitching post in a highway on which he was driving in the night, it appeared that the way was forty feet wide, smooth, wrought for travel with three carriage tracks, and so level that from the crest of the carriage-path to a fence on the side of the way there was a slope of less than three inches; that the post was one of three such posts, erected by the owner of the adjoining land upon the outer edge of a strip of the way, about six feet wide, between the carriage-path and the fence, which was used as a sidewalk but not bounded from the carriage-path by any gutter, trees, railing or curbstone; and that the plaintiff would have had no difficulty in passing the posts safely but for the darkness. *Held,* that there was no evidence on which it was competent for the jury to find that the way was defective.

TORT under the Gen. Sts. *c.* 44, § 22, for injuries sustained by being thrown from a carriage on a highway which the defendants were bound to keep in repair.

At the trial, before *Foster,* J., the plaintiff introduced evidence which tended to show that, on the night of September 14, 1866, which the plaintiff himself testified was the darkest night he ever knew, and at an hour when it was "so dark that he could not see his hand before him," he was driving slowly in a carriage drawn by one horse, on the highway in question, when suddenly he was thrown out, and severely injured, by the collision of the front axle of the carriage with a hitching-post, between three and four feet high, which, on the course on which he was driving, was the third of three such posts, each six inches in diameter at the base and tapering to three inches at the summit, standing in front of land of Charles A. Hack which abutted on the highway, and placed by Hack where they stood, the second forty-four and a half feet from the first, and the third twenty-three and a quarter feet from the second, and each of them about six feet distant from Hack's fence, the precise distance of the third post from the fence being six feet and three inches; that the space between the fence and the line on which the posts were placed was used as a sidewalk, but "it did not appear that Hack ever made any sidewalk, or gravelled it, or did anything whatever to make one except to erect said posts;" that the grading of the whole highway, which was forty feet wide and was wrought for

travel with three carriage tracks, was so uniform and level that from the middle of the carriage-path to Hack's fence there was a slope of less than three inches, and carriages were accustomed to be driven along not more than one foot outside of the line of the posts and sidewalk, which was not defined by any gutter, ditch, tree, railing or curbstone; and that the whole surface of the highway was so hard that the wheels of carriages passing over it made no ruts, and the plaintiff had no indication by the motion of his carriage that it was at all out of the usual carriage-path until one of its front wheels, and almost immediately the front axle, struck the post, and the accident occurred. The plaintiff himself testified that there was " a plain place for travelling clear across without obstruction between the posts and the fence on the opposite side, with nothing to make it unsafe if he could have seen," and that " its being so level was the only respect in which this differed from an ordinary road."

On this evidence the defendants contended that the jury would not be warranted in finding that the plaintiff used due care, or that there was any defect in the way for which the city was liable; and the judge, being of the opinion that there was no sufficient evidence of a defect in the way, withdrew the case from the jury, and reported it for the determination of those questions by the full court, to stand for trial if the evidence reported would warrant a verdict for the plaintiff, otherwise judgment to be entered for the defendants.

*E. Ames,* for the plaintiff.

*E. H. Bennett,* (*H. J. Fuller* with him,) for the defendants.

CHAPMAN, C. J. Our statutes require that highways shall be made reasonably safe and convenient for travellers. But it has been decided that this requirement does not necessarily extend to the whole width of the highway as located. When sidewalks are not made, it is sufficient if there is a carriageway of sufficient width, properly constructed, and protected by such railings as may be necessary. On each side of this way there may be ditches. These are so necessary for the proper drainage of the carriageway that they are held not to be defects, if properly constructed, though travellers may be liable to fall into them

in the dark. Beyond the ditches, no provision need be made for safety or convenience, except in places where sidewalks are made; and these are not for the benefit of carriages or teams. In the towns the owners of the adjoining lands, and in the cities the municipal authorities, may construct sidewalks, " indicating their width by trees, posts or curbstones, set at reasonable distances apart, or by a railing erected thereto." Gen. Sts. *c.* 45, § 6. Shade trees may also be planted in streets by consent of the municipal authorities. It is obvious that persons travelling in the dark are exposed to the danger of driving their carriages against these posts, trees, railings or curbstones, as well as into the ditches; and injuries may be caused thereby. But the legislature, so far from regarding these things as defects, has made it a penal offence to drive a horse or team along the sidewalk, or negligently or wilfully to injure one of the trees. Gen. Sts. *c.* 46, § 8. And towns and cities are not required to furnish lights for the use of persons who travel in the dark, in order that they may avoid collisions with these objects.

In the present case, it appears by the plaintiff's evidence that the road is located forty feet wide. It has sidewalks seven feet wide, but not protected by curbstones, railings, posts or trees, nor indicated by ditches. The owner of the land has erected three hitching-posts at considerable distances apart, between the sidewalk and the carriage-path, and about where the city authorities might properly have placed posts, trees or railings, or might have excavated a ditch, if they had thought it necessary. The posts have been permitted to remain there by the city authorities, and if they should be removed it is clear that the authorities might legally erect others in their place. It is not contended that these posts made the carriage-path too narrow; and it appeared by the plaintiff's evidence that there was no trouble about carriages passing in the daytime. But the plaintiff was travelling in his wagon in the night, when it was extremely dark, had not provided himself with a lantern, could not see, and drove against one of these posts. He contends that the post was a defect. But as it appears that the carriageway was of ample width, and was level and smooth and straight, and

as there would have been no trouble in passing, except for the darkness, and the post was not in the carriage-path, and as all this appears by the plaintiff's evidence, the court can see no groun:t upon which it would be legally competent for the jury to fin that the carriageway was defective.

*Judgment for the defendants.*