CHARLES F. DOUGHERTY, Respondent, *v.* TRUSTEES OF THE VILLAGE OF HORSEHEADS, Appellant.

1. MUNICIPAL CORPORATIONS — DUTY AS TO CONDITION OF STREETS. While it is the duty of a municipal corporation to use reasonable care to keep its streets in a safe condition to drive upon, it has the right to devote the sides of the streets to other useful public purposes, provided it leaves an unobstructed driveway of ample width for the passage of teams.

2. GRASS PLOTS AND SHADE TREES IN STREETS — PROTECTION FROM TRAVEL.  Grass plots and shade trees on the sides of streets serve a useful public purpose, consistent with the object for which streets are made, and their maintenance and protection, by reasonable means, from the encroachment of travel, are within the right of the municipal corporation.

3. PRIVATE DRIVEWAYS TO ABUTTING PREMISES.  A municipal corporation may, under reasonable regulations and conditions, permit private driveways to be built from the lands of abutting owners to the driveway of the street, and when they pass near trees or grass plots may protect the latter and confine travel to the driveways by curbing or other suitable barrier.

4. LAWFUL OBSTRUCTION OF STREET BY STONE TO PROTECT GRASS PLOT AT PRIVATE DRIVEWAY. The maintenance, at the end of a grass plot in an uncurbed village street between the sidewalk and the street-driveway and at the edge of a private driveway to the abutting premises, of a stone, to protect the grass plot and a tree thereon from being driven upon, and to confine travel to the driveways, but leaving them of ample width for the passage of teams, does not render the municipal corporation responsible for a personal injury sustained through the collision of a vehicle with the stone, even when the stone was covered with snow.

*Dougherty* v. *Vil. of Horseheads*, 5 App. Div. 625, reversed.

(Argued April 21, 1899; decided May 2, 1899.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered September 5, 1896, affirming a judgment in favor of the plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*W. L. Dailey* for appellant.  The foundation of this action being negligence, some wrongful act or willful neglect of duty must be established to justify submission of the case to a

jury. (*Hemmens* v. *Nelson*, 138 N. Y. 517; *Smith* v. *Mayor, etc.*, 66 N. Y. 296; *Hubbell* v. *City of Yonkers*, 104 N. Y. 434; *Hunt* v. *Mayor, etc.*, 109 N. Y. 134; *Ring* v. *City of Cohoes*, 77 N. Y. 83; *McCumber* v. *City of Taunton*, 100 Mass. 285; *Cushing* v. *City of Boston*, 128 Mass. 330; *City of Wellington* v. *Gregson*, 31 Kans. 99; *Dubois* v. *City of Kingston*, 102 N. Y. 219; *Linkhauf* v. *Lombard*, 137 N. Y. 417.) The stone complained of was lawfully in the street and was not an obstruction thereto. (*Roach* v. *City of Ogdensburg*, 28 N. Y. Supp. 450; *Carr* v. *Northern Liberties*, 35 Penn. St. 324.) The plaintiff and Gillmore were guilty of gross carelessness which caused the injury complained of, and the burden was upon plaintiff to show the exercise of due care. (*Hale* v. *Smith*, 78 N. Y. 483; *Brickell* v. *N. Y. C. & H. R. R. R. Co.*, 120 N. Y. 290; *Donnelly* v. *B. C. R. R. Co.*, 109 N. Y. 16; *McCumber* v. *City of Taunton*, 100 Mass. 225.) The defendant was not required to maintain and keep in a safe condition for public use the driveway into Platt's hotel shed or barn. (Elliott's Roads & Streets, 523.) The complaint alleges that the stone was an obstruction to travel along Main street. The proof tends to show that the only injury was received while plaintiff was going from Platt's barn onto Main street. This is a fatal variance and a failure to prove the allegations of the complaint. (*Woolsey* v. *Ellenville*, 23 N. Y. Supp. 410; *Reed* v. *McConnell*, 133 N. Y. 425; *Day* v. *Town of New Lots*, 107 N. Y. 148; *Truesdell* v. *Sarles*, 104 N. Y. 164; *Wright* v. *Delafield*, 25 N. Y. 266; *Butcher* v. *Hyde*, 152 N. Y. 146.)

*Frederick Collin* for respondent. The finding of the jury that plaintiff was not guilty of contributory negligence, approved by the unanimous decision of the Appellate Division, is not open to review by this court. (Const. N. Y. art. 6, § 9; Code Civ. Pro. § 191; *Tinker* v. *N. Y., O. & W. R. Co.*, 157 N. Y. 312; *People ex rel.* v. *Barker*, 152 N. Y. 417; *Szuchy* v. *H. C. & I. Co.*, 150 N. Y. 219.) The facts proved were sufficient to support a finding of negligence on

the part of the defendant. (Code Civ. Pro. §§ 191, 1337; *Bryce* v. *L. F. Ins. Co.*, 55 N. Y. 240 ; *Maher* v. *C. P., N. & E. R. R. R. Co.*, 67 N. Y. 52; *Butler* v. *R. R. Co.*, 121 N. Y. 112; *People ex rel.* v. *Dolan*, 126 N. Y. 166 ; *Tinker* v. *N. Y., O. & W. R. Co.*, 157 N. Y. 312; *Smith* v. *Pettie*, 70 N. Y. 13 ; *Duryea* v. *Vosburgh*, 121 N. Y. 57 ; *Hazman* v. *H. L. & I. Co.*, 50 N. Y. 53 ; *Nelson* v. *Vil. of Canisteo*, 100 N. Y. 89 ; *Whitney* v. *Town of Ticonderoga*, 127 N. Y. 40.) Defendant was responsible for the unsafe condition of the street, and this action will lie against it. (L. 1855, ch. 486, §§ 2, 3, 26 ; L. 1870, ch. 448, § 5 ; *McSherry* v. *Trustees of Canandaigua*, 129 N. Y. 612 ; *Pomfrey* v. *Vil. of Saratoga Springs*, 104 N. Y. 459.) The placing of the stone was not a judicial act of the village. (*Urquhart* v. *City of Ogdensburgh*, 97 N. Y. 238.) The village might not, in pursuance of any plan, place this obstruction upon the street. (*Rankert* v. *Town of Junius*, 25 App. Div. 470 ; *Brown* v. *City of Syracuse*, 77 Hun, 411.) Within the limits of the street, the defendant might not lawfully do, or permit to be done, any act which would make the roadway to the barn unsafe and dangerous. It was bound to use reasonable care to keep safe the street as used. (*Fisher* v. *Vil. of Cambridge*, 133 N. Y. 527 ; *Burnham* v. *City of Boston*, 92 Mass. 290 ; *Requa* v. *City of Rochester*, 45 N. Y. 129.)

VANN, J.   This action was brought to recover damages for personal injuries sustained by the plaintiff through the alleged negligence of the defendant. As the jury found for the plaintiff, they are presumed to have found all the facts in his favor that have any reasonable support in the evidence. Those facts, so far as they are material to the question discussed, are substantially as follows : Main street, in the village of Horseheads, over sixty feet in width, runs substantially north and south, and at the point where the accident in question happened there is a driveway leading from the west line of the street, a distance of about twenty feet, to a barn. The west line of the street is ten feet west of the west line of

the driveway of the street, which is forty-three feet wide. It is one foot from the west exterior line of the street to the sidewalk, which is six feet wide, and adjoining the sidewalk on the east is a grass plot three feet wide in which there is a row of trees. There is no curbing or gutter between this grass plot and the driveway of the street, but there is a slight depression in the place where a gutter would naturally be, through which the surface water flows to the south. The most northerly tree standing in the grass plot is about three feet southerly from the driveway leading to the barn. East or northeast of that tree, and two or three feet therefrom, was an egg-shaped stone about twenty-four inches long north and south, eighteen inches wide east and west, and from a foot to eighteen inches high, described by some of the witnesses as a large boulder about the size of a bushel basket. It was placed there in 1885 upon the suggestion of the owner of the barn under the direction of the street commissioner of the village. The object of the stone was to protect the grass plot and the tree from injury by persons driving upon the street or to the barn. At the time of the accident the stone was covered with snow, which had recently fallen to the depth of about six inches. The plaintiff was in a cutter with a single horse attached, driven by and belonging to one Gilmore. As they were coming out from the barn to the street in the daytime upon a slow trot, the right runner of the cutter struck the stone, the cutter was tipped over throwing the passengers out and inflicting somewhat severe injuries upon the plaintiff. The Appellate Division in affirming the judgment entered on the verdict stated that the court was not "unanimous on the question as to whether the facts proved were sufficient to support a finding of negligence on the part of the defendant."

While it is the duty of a municipal corporation to use reasonable care to keep its streets in a safe condition to drive upon, it has the right to devote the sides of the streets to other useful public purposes, provided it leaves an unobstructed driveway of ample width for the passage of teams. It may construct sidewalks of a higher grade and gutters of a

lower grade than the driveway, place curbing on the line of the gutters, erect hydrants and authorize the erection of hitching posts and stepping stones, as well as poles to support the wires of telegraph and telephone lines. It may lay out grass plots on the sides of the streets, set out trees therein and protect both grass and trees from injury by fences or other reasonable means. It may thus to a reasonable extent and for a useful public purpose, narrow the driveway and exclude teams altogether from the sides of the street. It may, under reasonable regulations and conditions, permit private driveways to be built from the lands of abutting owners to the driveway of the street, and, when they pass near trees or grass plots, protect them from trespass by those driving in or out. For this purpose they may bend the line of curbing in towards the sidewalk, so that it will limit the private driveway and prevent teams from passing over the grass or running against the trees. If a person drives against the curb either on the side of the street or on the side of the driveway, it is his own fault or misfortune, for one object of the curbing is to prevent driving beyond its lines. In the case before us a large stone took the place of curbing, in order to keep people from driving over the grass and against the tree. While it was an obstruction, it was a lawful obstruction the same as a fence, hydrant or telegraph pole. It was properly placed there for the purpose of obstructing travelers who might otherwise drive over the grass plot and injure the trees. It separated the driveways from the lawn, so as to confine teams to the part devoted to travel, and when Mr. Gilmore drove against it, the legal effect was the same as if he had driven against a fence post placed there for the same purpose. Both driveways were of ample width, the grade was substantially level, and there was no difficulty in reaching the traveled portion of the street without running against this stone, which marked the passageway for teams and shielded objects designed to make the street attractive. Grass plots and shade trees on the sides of streets serve a useful public purpose, consistent with the object for which streets are made, because they add

to the beauty of the scene, and the trees furnish shade for pedestrians during the heat of summer. Both tend to increase the value of abutting property and to enlarge the range of taxation.

These views find support in the principles established by the adjudged cases. (*Ring* v. *City of Cohoes*, 77 N. Y. 83; *Dubois* v. *City of Kingston*, 102 N. Y. 219; *Hubbell* v. *City of Yonkers*, 104 N. Y. 434; *Hunt* v. *Mayor, etc.*, 109 N. Y. 134; *Platt* v. *Mayor, etc.*, 28 N. Y. Supp. 672, 674; *Macomber* v. *City of Taunton*, 100 Mass. 255, 257; *Cushing* v. *City of Boston*, 128 Mass. 330; *City of Wellington* v. *Gregson*, 31 Kans. 99, 103; Thomas on Negligence, 972, 991.)

In *Ring* v. *City of Cohoes* the court said: "It will be observed that the referee found the defendant negligent, both as to the heap of ashes and the hydrant, and that such negligence contributed to the accident; and he finds against the defendant on account thereof. He based his judgment upon two defects in the street; and how much he was influenced in reaching his conclusion by either, we cannot tell. He certainly erred in finding that the defendant was negligent as to the hydrant. That was of iron, erected by the city in the curb, about eight inches in diameter and two and a half feet high, with a nozzle about six inches from the top, projecting over the gutter about four inches. The gutter was at least a foot wide. There was no evidence that this hydrant was not properly constructed, or that it was not properly placed where it was. It would seem that it could be placed in no position where it would be less inconvenient than in the curb. There it was, as much as possible, out of the way of pedestrians upon the sidewalk and vehicles upon the street. A hydrant answers a useful and necessary purpose, and it is required to be placed somewhere in the street; and when the public authorities determine to place one in the curb, it cannot be said that they have done a negligent act. If so, it would be negligent to permit awning or hitching posts to be placed, or trees to grow on the edge of a sidewalk, extending partly, as they frequently do, into the gutter.  *  *  *  The finding,

therefore, that the city was negligent as to this hydrant, was without any evidence to support it."

In *Dubois* v. *City of Kingston* it was said : " The stepping stone over which the plaintiff fell and was injured was not of unusual size or of an improper construction, nor was it located at an improper place.   It was placed in a position on the sidewalk most convenient for persons who should alight from a wagon or carriage or get into the same from the sidewalk, and thus it was a means of accommodation to those who had business at the post office or in the building in front of which it was located.   \*   \*   \*   There was no difficulty in passing along the open space without coming in contact with it.   The stepping stone could have been placed in no position in which it could have been more useful and convenient in front of the post office, and there is no ground for claiming that it should have been guarded and protected so as to prevent people from running against it.   Such caution is not required in placing such a necessary and convenient appendage in front of a building in the public street, and it cannot be said, we think, that it is dangerous necessarily when occupying such a position. The fact that other persons had been injured by falling over the stone does not, of itself, establish that it was improperly placed in the location it occupied, or that it was necessarily of such a dangerous character as to require the interposition of the city authorities to remove it.   Such an accident might well take place in reference to any necessary structure connected with the sidewalk or a building thereon, which might possibly interfere with persons using the same.   \*   \*   \*   As this case is presented there is no evidence which justifies the conclusion that the stepping stone in question was dangerous to travelers passing along the street, or that the city authorities were chargeable with negligence in allowing it to remain where it was located."   The judgment was reversed because the trial court erred in denying the motion to nonsuit, as well as the motion to dismiss the complaint.

In *Macomber* v. *City of Taunton* (*supra*) the court, after stating that the street in question was forty feet wide as

located, with sidewalks seven feet wide, " but not protected by curbstones, railings, posts or trees, nor indicated by ditches," proceeded as follows: " The owner of the land has erected three hitching posts at considerable distances apart, between the sidewalk and the carriage path, and about where the city authorities might properly have placed posts, trees or railings, or might have excavated a ditch, if they had thought it necessary. The posts have been permitted to remain there by the city authorities, and if they should be removed it is clear that the authorities might legally erect others in their place. It is not contended that these posts made the carriage path too narrow, * * * but the plaintiff * * * contends that the post was a defect. But as it appears that the carriageway was of ample width, and was level and smooth and straight, and as there would have been no trouble in passing, except for the darkness, and the post was not in the carriage path, and as all this appears by the plaintiff's evidence, the court can see no ground upon which it would be legally competent for the jury to find that the carriageway was defective."

We will quote from but one other case, which was decided by Mr. Justice BREWER, now of the Supreme Court of the United States, who, speaking for the Supreme Court of Kansas in *City of Wellington* v. *Gregson* (*supra*), said: " It is a familiar fact that in all our cities lotowners are accustomed to plant shade trees in front of their lots. Many streets are thus rendered beautiful by the long rows on either side. Especially is this true in the residence portion of the city. Sometimes these trees are in the sidewalk, but more often just outside the sidewalk, in the street proper. Often, especially when the trees are young, they are inclosed with boxes or railing, to prevent their injury by straying cattle or passing teams. Can it be that permitting these things is *per se* negligence on the part of the city; that every time a buggy runs against one of these trees or its protection, the city is liable for all injuries, unless the driver was also negligent? Cannot a party put a hitching post in front of his residence without exposing the city to a charge of negligence, unless he has placed it

21

more than a carriage width from the traveled track? These questions carry their own answer."

We think there was no evidence of negligence upon the part of the defendant for the consideration of the jury, and that the trial court should have granted the motion for a nonsuit on that ground. This conclusion makes it unnecessary to consider the other questions so fully argued by counsel.

The judgment appealed from should be reversed and a new trial granted, with costs to abide the event.

All concur, except BARTLETT, J., not voting, and MARTIN, J., dissenting.

Judgment reversed, etc.