## JORDAN v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. November 10, 1899.)

1. MUNICIPAL CORPORATIONS—DRIVEWAYS—NEGLIGENCE.

A properly paved driveway was built by a city across a sidewalk to permit the driving of vehicles of ordinary width to and from private premises abutting on the street. A pile of paving stones upon the sidewalk extended to one side of the driveway. On the other side, near the curbing, a firmly-set hub stone projected about 18 inches above the sidewalk. The width of the driveway between the stone pile and the hub stone was 8 feet and 1 inch. Plaintiff's intestate, a truck driver, used a truck 7 feet wide. As he drove over the driveway the front wheel struck the hub stone, so that he was thrown into the street and fatally injured. Held, in the absence of any regulation as to the width of such driveways, or any showing that trucks of this extreme width were accustomed to be driven over it, that the city was not guilty of negligence.

2. SAME—CONTRIBUTORY NEGLIGENCE—KNOWLEDGE OF DANGER.

If one who is familiar with a public driveway, made reasonably safe for vehicles of ordinary width, attempts to drive a truck of extreme width over it, he assumes the risk necessarily involved in the act.

Barrett, J., dissenting.

Appeal from trial term, New York county.

Action by Mary Jordan, administratrix, etc., against the city of New York. From a judgment dismissing the complaint (55 N. Y. Supp. 716), and an order denying a new trial, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

George S. Daniels, for appellant.
Theodore Connoly, for respondent.

RUMSEY, J. The action was brought to recover damages for an alleged negligent act of the defendant, causing the death of the plaintiff's husband and intestate. At the trial, upon the opening of counsel, the complaint was dismissed on the motion of the defendant. A motion for a new trial was denied, and from the judgment entered upon the dismissal of the complaint, and the order denying the motion for a new trial, this appeal is taken.

In examining the case it must be taken for granted that every fact stated by the plaintiff in his opening would have been susceptible of proof, and the question to be determined is whether, taking all these facts as true, and drawing from them every fair inference which a reasonable man might draw, do the facts stated tend to show a cause of action in behalf of the plaintiff against the defendant, so that, if the case had been presented to a jury, they might fairly have found a verdict in her favor? The husband of the plaintiff, because of whose death this action is brought, was a truck driver. On the 28th of February, 1898, having laden his truck with a load of scrap iron, he had gone to the premises of the Consolidated Gas Company, at Seventeenth street and Eleventh avenue, for the purpose of weighing his load. He entered the premises of the gas company on Thirteenth avenue, and drove his truck to the scales. After the weighing was finished, he started to go into the street by a driveway that led out to Eleventh avenue, over the premises of the gas company, and approached the street between two buildings, which extended up to the boundary of the driveway on each side, and out to the sidewalk in front. From the sidewalk to the curbing of the street, the driveway was paved with cobble stones. On the right side as one went out there had existed for a long time a pile of paving stones upon the sidewalk, which extended up to the line of the driveway, some few of the stones projecting a few inches over the drive. On the left side, and in a line with the side of the building which formed the boundary of the driveway, or the gas company's premises, was a hub stone, projecting about 18 inches above the sidewalk, and firmly set in the street at the end of the driveway. This driveway was a part of the public street, except that ordinarily it would have been part of the sidewalk. It had been used for years as a driveway, and was paved in such way that it could be used for that purpose. The driveway was 8 feet and 1 inch wide, which was the distance between the pile of stone on the south side and the hub stone on the north side of the walk. The plaintiff's intestate had driven through this driveway with his truck once before on that day, and was aware of the situation of affairs at that place. The truck which he was using was 7 feet from the outside rim of the tire on one side to the outside rim of the tire on the other, so that as he

went through the driveway he had but 1 foot and 1 inch more than sufficient room to pass with his truck; and, as he was driving out upon the sidewalk at the time the injury was received, from some cause, which is not known his left forward wheel struck the hub stone with such force that he was thrown into the street, and received injuries which caused his death. Upon this state of affairs it was claimed by the plaintiff that the city was negligent, because it maintained for several years prior to the accident this hub stone at the corner of the driveway, which was an obstruction to the street, which served no purpose, and which was entirely unnecessary, and which so narrowed the driveway that it made it unsafe for persons who had occasion to use it. The defendant, on the contrary, claimed that it was guilty of no negligence in maintaining the driveway as it was originally laid out; that no duty rested upon it to do any more with regard to that driveway than to maintain it in a reasonably safe condition as it was originally built, and that, if the plaintiff's intestate saw fit to attempt to use the driveway in the condition in which he knew that it was, he took the risk of his attempt; and that his administratrix is not in a position to say that his death took place solely because of its negligence.

In the examination of the question it must be assumed that the driveway was a part of the public street, that it was originally laid out and paved, and that it was maintained by the city for that purpose as a part of the street; these facts having been stated in the opening,—however far from the actual truth they may be. It is not claimed that the surface of the driveway was not in a reasonably safe condition for use, but it is said that upon the facts stated a jury would have been justified in finding that the driveway was not of sufficient width to serve the purposes for which it was intended, and therefore the city was negligent in thus laying it out. There is no ordinance or regulation which establishes the width of a driveway across the sidewalk for the purpose of permitting one to go over the street into the premises of a private individual. All that any one is required to do, who has occasion to lay out such a driveway, is to use reasonable care to make it reasonably safe for those persons who have occasion to use it. In so laying it out he is called upon only to provide for carriages of such width as are ordinarily used. The width of such carriages is a matter of common knowledge, of which the courts may take judicial notice, as they may take notice of every other matter which is ordinarily known to mankind. Isaacson v. Railroad Co., 94 N. Y. 278; Steers v. Steamship Co., 57 N. Y. 1; Pearce v. Langfit, 101 Pa. St. 512. That width of the track of carriages as well as of railroad cars, as is well known, is 4 feet $8\frac{1}{2}$ inches, and whoever has occasion to lay out a driveway is called upon only to lay it with reference to use by a carriage of that width, unless he has reason to know that other carriages of greater width are accustomed to be driven upon it. Undoubtedly a person is at liberty to use the highway with whatever vehicle he may see fit to drive upon it which is fit for that purpose, but if he sees fit to go upon the public street with a

vehicle of unusual construction or of unusual weight, if the high-way which is built for ordinary carriages and to sustain an ordinary weight should prove too narrow for his carriage, or should break down under the extraordinary weight which he sees fit to put upon it, he cannot insist that the city is negligent. Such is the rule which is laid down in regard to traction engines and carriages of such weight passing over ordinary highways, and the same rule should be applied in regard to all highways. So, therefore, when the city built this driveway,—if it did build it, as alleged in the opening,—it was called upon simply to make provision for a carriage of the ordinary width which people were accustomed to use; and if the carriage which was in use at the time the accident happened did, by reason of its extreme width, take up so large a proportion of this driveway as that the driveway, which, for a carriage of ordinary width would have been safe, became unsafe for this carriage because of its extreme width, the city was not liable, in the absence of proof that trucks of this extreme width were accustomed to be driven over it. It is well settled that the existence of a hub stone like this at the intersection of two roads is not negligence, unless it is so placed as to unduly reduce the width of the highway, even if it is negligence then. Dougherty v. Trustees, 159 N. Y. 154, 53 N. E. 799. Within the facts which were offered to be proved in this case, the cases above cited, and many others which are cited in the opinion in Dougherty v. Trustees, supra, establish, we think, that there was no negligence on the part of the city in constructing and maintaining this driveway.

We think, too, that the plaintiff's intestate, when he undertook to drive through this passage with a truck of such extreme width, being, as the opening shows, familiar with the passage, took upon himself the risk, if there was any, which was necessarily involved in that act. He knew the width of the driveway; he knew the condition of its surface, which, as we must conclude, was such as to make the driveway in that regard reasonably safe for use; he knew the width of his own truck, and how much space there would be to spare when he attempted to pass between the pile of stone and the hub stone; and, in attempting to go over that passage, he was just as well aware of the apparent danger, if there was any, as it was possible for a man to be. If it was not safe for him to attempt to drive that truck over that passageway in that condition, he knew it, and, if he attempted to drive it, he certainly took the risks himself. The case is not within the case of Schafer v. City of New York, 154 N. Y. 466, 48 N. E. 749. In that case the so-called obstruction was left precisely in the middle of the highway, so that it was quite possible that one using the highway, even with due care, would run upon it. The court held that, because the obstruction was in the middle of the highway, a person attempting to use the highway was not precluded from attempting to pass, and if he did attempt to pass, using reasonable care, he was not guilty of contributory negligence, if, without his own carelessness, he ran upon the obstruction; but in that case the court said that the question was a very close one, and the case was not decided with-

out dissent. In this case, however, there was no obstruction in the driveway, but, so far as appears, that part of the road was in perfect condition. The obstruction, if it was an obstruction, was out of the track, and the plaintiff's intestate did not keep in the track which was provided for him to drive over.

The judgment and order must be affirmed, with costs to the respondent. All concur, except BARRETT, J., who dissents.

BARRETT, J. (dissenting). The complaint here was dismissed upon the plaintiff's opening. From this complaint and opening the following facts appear, or are fairly deducible: The action was brought to recover damages from the city because of its alleged negligence in so restricting a driveway from one of its streets to the premises of an abutting owner as to cause the death of plaintiff's intestate. The driveway in question led from Eleventh avenue, in the city of New York, at a point near the southwest corner of that avenue and Seventeenth street, into the premises of the Consolidated Gas Company. This driveway had been used for many years by the Consolidated Gas Company and its customers as a passageway from the street to reach certain platform scales of the company upon which loaded trucks, driven there for that purpose, could be weighed. It had an entrance, also, from Thirteenth avenue, but it appears that there was a slight grade from the scales to Eleventh avenue, so that drivers who desired to reach these scales with their loaded trucks found it difficult to enter from Eleventh avenue; and their custom was to drive in from Thirteenth avenue, and out over the down grade, across the sidewalk on Eleventh avenue, and across the curb into the street. The driveway passed between two small brick buildings before it reached the sidewalk on Eleventh avenue, the scales being situated between these two buildings. As shown by photographs and a diagram produced by plaintiff's counsel, and accepted as part of his opening statement, this driveway was 10 feet and 10 inches in width. An iron bridge had been placed from the curb to the street at Eleventh avenue to enable trucks to pass into the street without bumping down into the gutter. The extreme width of this bridge was 10 feet and 9 inches. The actual available width of the driveway at the curbstone, however, was only 8 feet and 1 inch. This difference in width was caused by the fact that the city had placed what is called a "hub stone" at a point on the line of the curb so that its southerly side was 2 feet and 1 inch south of the north end of the iron bridge, thus cutting off that amount of space from the driveway on that side, while on the other or south side, the city had placed a large pile of heavy stones, several feet high, which extended from a point on the sidewalk almost up to the building line, out over the curb, and so close to the driveway as to limit it in width at the curb to 8 feet and 1 inch, as already stated. In addition, the jagged edges of some of these stones projected a few inches out into the driveway. The extreme width of the truck which was being driven by the plaintiff's intestate was 7 feet from the outside of one tire to the outside of the opposite

tire. It was further stated that the hubs projected beyond the tires a distance of 4 or 5 inches on either side. Plaintiff's intestate had driven a load of scrap iron in from Thirteenth avenue to the scales, and had it weighed. He then drove out to Eleventh avenue, down the slight grade, with the reins in his hands, looking at his horses and keeping them well in control, when suddenly the pole and the horses swung a little to the north, which was the side toward the hub stone. The front wheel of the truck struck the hub stone, and he was thrown to the ground, receiving injuries from which he subsequently died.

The nonsuit seems to have proceeded upon the theory that, inasmuch as the hub stone was not of itself a nuisance, the case fell within the general rule that a municipality cannot be held liable for injuries occasioned by driving against such structures. It may be at once conceded that the city acted rightfully, or at least did not act wrongfully, in placing the hub stone in this locality; and, if the pile of stones had not been placed by it on the other side of the driveway, it could not have been held for an accident resulting merely from contact with the hub stone. Where, however, after thus restricting the driveway on one side by a lawful structure, the city further restricted it upon the other side in the manner indicated, it seems to me that a question of negligence was fairly presented for the consideration of the jury. By placing the pile of stones where they were, the available width of the driveway at the curb was limited to 8 feet and 1 inch. The width of the truck driven by plaintiff's intestate was 7 feet from the outside of the tire on one side to the outside of the tire on the opposite side. This left at the point where the tires met the driveway a space of only 13 inches, or 6½ inches outside of either tire, within which the truck could be driven to avoid actual contact with the pile of stones, on the one hand, or the hub stone, on the other. Even this small space was not all available, as it was narrowed for actual use by the fact that on one side, at least, the driver had to allow 4 or 5 inches for the hub of his truck, which projected that distance from the outside of the tire, and upon the other side for the jagged edges of the stones which projected somewhat into the driveway. The space left after all these deductions was exceedingly narrow. It is difficult to see, therefore, how it can be held, as a matter of law, that the driveway was not improperly restricted. There can be no doubt that that portion of the driveway which crosses the sidewalk on Eleventh avenue is a part of the public street. Nor can there be any doubt as to the duty of the city to keep it reasonably safe and free from obstruction. Indeed, the city made no contention to the contrary on its motion to dismiss the complaint. In Dougherty v. Trustees, 159 N. Y. 154, 53 N. E. 799, the question of width was adverted to as an important consideration. It there appeared that a large bowlder had been placed at the end of a grass plot in an uncurbed village street, between the sidewalk and the street driveway, and at the edge of a private driveway to the abutting premises, to protect the grass plot and a tree thereon from being driven upon, and to confine teams to the two driveways.

It was held that the municipal corporation was not liable for an accident to the plaintiff caused by a collision of his vehicle with this bowlder, even though the bowlder was covered with snow at the time; the court, however, observing that:

"Both driveways were of ample width, the grade was substantially level, and there was no difficulty in reaching the traveled portion of the street without running against this stone which marked the passageway for teams."

Again, Ordinances 249 and 250 of the Ordinances of the City of New York provide for the construction of just such driveways as the one in question. They indicate the manner in which they must be constructed, paved, and repaired, and provide further that, if the abutting owner fails in his duty in these respects, the proper city official can have the work done, and compel the abutting owner to pay for it. In other words, the city recognizes its own liability for the continued good condition of these private driveways. If it permits them to be built and used, and sees to it that they are kept in good repair, how can it claim immunity for its own acts in encroaching upon them and rendering them unsafe for the very persons for whom they are constructed?

The question of contributory negligence was also for the jury. Upon the statement of plaintiff's counsel, the plaintiff's intestate was using all necessary care, and was rightfully on the premises. At the most, there could only then be a question of fact, as to whether or not an ordinarily prudent man, under all the circumstances, including that of the unusual width of the truck, would have been justified in using the driveway as plaintiff's intestate used it. It seems to me that the court, in affirming this judgment, is running counter to the principle enunciated in Schafer v. City of New York, 154 N. Y. 466, 48 N. E. 749. I am in favor of a reversal and new trial.