tially as good a condition as before. State v. Mayor, etc., of City of New Brunswick, 30 N. J. Law, 395; State v. City of New Brunswick, 32 N. J. Law, 549,—being the same case reported in the higher court. Or, at its option, I think that the village, having properly adopted a resolution changing the grade of Genesee street, might, upon reasonable notice, require the plaintiff to lower its road-bed so as to conform to the grade as changed. If, then, there was a failure to comply with such notice, it might itself do the necessary work, leaving the corporation to repair the road and put it in proper condition. Whether, under such circumstances, the village could recover over against the turnpike corporation the value of the work done by it, or whether the latter could recover of the former the expense of the change in case it complied with the notice, or the expense of repairing the road in case it did not, need not here be decided; but at least such a procedure would prevent an unseemly conflict of authority, and would minimize the damage to be occasioned to the one party or the other. Neither of these courses was adopted by the village in this case. Without warning or notice it tore up and partly destroyed the plaintiff's road, and left it in such a condition that a considerable sum will be necessarily expended in placing it in proper repair. This act I hold to be illegal. And I further hold that the village is liable for the damage occasioned thereby. There seems to be little dispute that such damages amounted to about $180, and I fix them at that sum. In coming to this decision I do not determine the question as to the legality of the various resolutions passed by the village changing, or attempting to change, the grade of Genesee street. Nor do I consider the question as to whether the turnpike road was in a suitable condition prior to the acts of the village, except so far as is necessary to hold that it did not constitute a public nuisance which the village authorities might abate. Holding these views, I find that the plaintiff is entitled to judgment enjoining the defendants from further interference with the roadway, and for $180 damages and costs against the village. Findings may be prepared in accordance with these views, and, if not agreed upon, may be settled before me.

Judgment accordingly.

---

(68 App. Div. 381.)

WALTER v. HAM et al.

(Supreme Court, Appellate Division, Second Department. January 17, 1902.)

WILL—CONSTRUCTION—JOINT TENANCY.

A will was drawn by a lawyer of experience for testator, who for 14 years had resided on a farm belonging to him, with his wife and son M., who was the only one of his children unmarried. In a clause in the will he gave the stock and other personal property on the farm to his wife and his son M. jointly, and further gave to his wife and his son M., "as joint tenants and tenants in common," such farm, to them and their heirs forever. *Held*, that it was the intent to devise the farm to the wife and son M. as joint tenants, and the court would change the will by striking out all after the words "joint tenants," or amend the clause to read, "as joint tenants, and not as tenants in common."

Appeal from judgment on report of referee.

Action by George W. Walter against Madison Ham and others. From a judgment for certain defendants on the report of a referee, complainants Jessie E. Ham and others appeal. Affirmed.

The following is the opinion of the court below (BURR, Referee):

The determination of this case involves the construction of the last will and testament of George H. Ham. The said Ham died on the 12th day of October, 1872. For about fourteen years prior to his death he had been the owner of a farm at Lattingtown, in the then county of Queens, now county of Nassau, which is described in the complaint. He left a will which was duly proved on the 3d day of January, 1873, which, among others, contained the following provision: "Seventh. I give, bequeath, and devise to my said wife, Ruthetta, and to my said son Madison Ham, as joint tenants and tenants in common, my farm at Lattingtown, near Glen Cove, to them and to their heirs absolutely and forever." Subsequently to the death of George H. Ham, and on the 27th day of August, 1875, his widow, Ruthetta Ham, died intestate. This action is brought by a grandson of the said Ruthetta Ham for a partition of the said farm. The defendant Madison Ham denies any tenancy in common between him and the plaintiff, and alleges that he is the sole owner thereof. If, by the clause of George H. Ham's will above referred to, a joint tenancy was created, then the defendant Madison Ham, as the survivor of his mother, took the entire estate, the plaintiff has no interest therein, and the action cannot be maintained. If, on the other hand, the defendant Madison Ham and his mother, Ruthetta, took under the said will as tenants in common, then the plaintiff has an undivided interest in the said farm, and may maintain the action. The language of the will, so far as it attempts to declare the character of the estate of the devisees therein, is to the effect that they shall hold "as joint tenants and tenants in common." It is manifest that the devisees cannot hold the property both as joint tenants and as tenants in common. They must hold in one capacity or the other. These clauses of the will being inconsistent, and the will thereby made ambiguous, the intent of the testator must be sought for, and, if that intent can be clearly determined from the will itself and the circumstances attending its execution, that clause which does not effectuate testator's intention may be expunged, or words may be inserted into the will or omitted from it in order to carry such intent into effect. Benjamin v. Welch, 73 Hun, 371, 26 N. Y. Supp. 156; Govin v. Metz, 79 Hun, 461, 29 N. Y. Supp. 988; Phillips v. Davies, 92 N. Y. 204. The only limitation upon this power of addition, omission, or transposition is that it shall be exercised in aid of the testator's intent and purpose, and not to devise a new scheme or to make a new will. Karstens v. Karstens, 29 App. Div. 229, 45 N. Y. Supp. 966, 51 N. Y. Supp. 795; Roe v. Vingut, 117 N. Y. 204, 22 N. E. 933; Haug v. Schumacher, 50 App. Div. 562, 64 N. Y. Supp. 310; Herrick v. Snyder, 27 Misc. Rep. 462, 59 N. Y. Supp. 229.

The questions in this case, therefore, are: First. Did the testator intend to devise this farm to his son Madison and his wife, Ruthetta, as joint tenants, or as tenants in common? Second. Can we find a declaration of this intent in the will itself, construed in the light of the circumstances attending its execution?

If the testator had made no reference in the will to the character of the estate of the devisees in said land, they would have taken the same as tenants in common. "Every estate granted or devised to two or more persons in their own right shall be a tenancy in common unless expressly declared to be in joint tenancy." 2 Rev. St. (Banks' 9th Ed.) p. 1794, § 44. The will in question was drawn by a lawyer of considerable experience. It may be presumed that he knew that, if no words were employed declaring the character of the estate of the devisees, they would take as tenants in common. The fact that it was deemed necessary to use language descriptive of such estate in order to express the testator's intent would indicate that such intent was to give the devisees a different estate from that which they would have received had the will been silent on that subject. Again, the expres-

sion generally used in wills or other instruments where the desire is to create a joint tenancy is, "as joint tenants, and not as tenants in common." This usage being a matter of common knowledge, the courts may take judicial notice of it. Jordan v. City of New York, 44 App. Div. 149, 60 N. Y. Supp. 696. If, therefore, the language of this will is amended by inserting after the word "and" the words "not as," we have an expression in common use which clearly expresses the intent of the testator to create a joint tenancy. The alternative to this construction is either to disregard the entire clause, as meaningless, or to say that the testator used language for the purpose of declaring the character of the estate of the devisees, when such declaration was entirely unnecessary. That such construction is entirely within the rule adopted by the court in other cases seems clear. In the Haug Case, supra, the court wrote into the seventh and eighth clauses of the will, after the words "real estate," the words "and personal property"; and in the Herrick Case, supra, the court construed the words "children of my second marriage" as meaning "children of my second husband by his former marriage"; and in the Govin Case, supra, the court struck out a part of an erroneous description of real property devised by the will under consideration.

There are other circumstances which seem to indicate an intent on the part of the testator to give the farm in question to his wife and son Madison during their joint lives, and to the survivor absolutely. For fourteen years before testator's death he had resided on the said farm with his said wife and son. His son at that time was unmarried. All of the other children had married and left home. It might well be that he desired to encourage his son and widow to reside together as one family, for their mutual support and comfort, by a provision which should secure to the survivor the sole ownership of the farm upon which they resided, and which had for so many years been their home. Some indication of such intent may be found in a previous clause of the will, whereby he gave to the same persons jointly the stock, implements, tools, and other goods and chattels "on my farm, and thereto belonging." It would be singular if he thought it necessary to provide so carefully for the joint ownership of the personal property upon the farm which was necessary to its use as such, while at the same time he made it possible for either of the devisees of the farm itself to dispose of an undivided half thereof absolutely, and without the consent of the other, as would have been the case if they had taken as tenants in common.

If, then, it was the intent of George H. Ham to devise this farm to his wife and his son Madison, it only remains to inquire, was this intent "expressly declared" in the instrument devising the same? If the language of the will had been "to my said wife, Ruthetta, and to my said son Madison Ham, as joint tenants,"—stopping there,—no question could be raised that this was a sufficient express declaration. Within the authorities above cited, we may expunge all of the words of that clause of the will after the words "joint tenants," or we may amend the clause following those words by inserting after the word "and" the words "not as." In either case the intent is "expressly declared" in the will. Viewing the will in the light of all the circumstances surrounding its execution, I think that the intent of the testator was perfectly clear to create a joint tenancy therein in favor of his wife and son, and that such intent was expressly declared in the said will. It follows, therefore, that this action cannot be maintained, and judgment should be directed in favor of the defendant Madison Ham, that the complaint be dismissed, with costs.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

Henry Escher, Jr., for appellants.
Guy C. Frisbie and E. T. Payne, for respondent.

PER CURIAM. Judgment affirmed, with costs, on the opinion of the referee.