CITY OF TULSA v. ENSIGN et al.

No. 29812. Sept. 30, 1941.

Rehearing Denied Oct. 21, 1941.

*117 P. 2d 1013.*

E. M. Gallaher, Thomas I. Munroe, John W. McCune, and Oran McCain, all of Tulsa, for plaintiff in error.

Bailey E. Bell and Robert B. Thomas, both of Tulsa, for defendants in error.

RILEY, J. Defendant in error, Georgia Ensign, brought this action against defendants in error O. E. Hunt, William C. Stighman, Pearl Stighman, and the city of Tulsa, to recover damages suffered by her as a result of tripping over a wire which was stretched along the east side of a driveway leading from the street to the sidewalk. The property is located at 711 W. Fourth street in the city of Tulsa and was owned and occupied by defendant Hunt, William C. and Pearl Stighman (and is referred to herein as the Hunt property). Judgment was for plaintiff against all defendants. Hunt and William C. and Pearl Stighman do not appeal. The city of Tulsa appealed and named its codefendants in the trial court as defendants in error herein.

The plaintiff, on March 27, 1939, lived on the south side of Fourth street about 150 feet east of the driveway in question. On the night of March 27, 1939, about 9:45 p. m., plaintiff started to go from her home to the home of a neighbor who lived at 715 W. Fourth street second door west of the Hunt property. It was dark and raining. She went diagonally across Fourth street to a point a short distance east of the driveway on the Hunt property. In front of the Hunt property and between the sidewalk and street curb is a parkway space about 19 feet wide. The driveway crosses the park space at the west end thereof. Defendants Hunt, Stighman, and Stighman had sowed the parkway space to grass and had stretched a small wire along the west end of the parkway space and parallel with the driveway, and attached

it to some small stakes about 18 inches above the surface. This was designed and intended to prevent pedestrians from walking over the grass plot. Just before plaintiff came to the driveway she went diagonally across the parkway and tripped over the wire, fell on the paved part of the driveway and received the injuries for which she sues.

Plaintiff's claim is that her injuries were the direct, proximate, and immediate result of the negligence of defendants Hunt and Stighman in stretching said wire across the public parking and keeping it so stretched in the nighttime where no street lights were maintained; that in doing so they were acting in violation of the ordinances of the city of Tulsa, and were thereby maintaining a public nuisance, in that said ordinance provides:

". . . The following are hereby declared to be public nuisances; a thing, act, occupation or use of property which;

"(a) Shall annoy, injure, or endanger the safety, health, comfort, or repose of any considerable number of persons.

"(b) Shall offend the public decency;

"(c) Shall unlawfully interfere with, obstruct, or tend to obstruct or render dangerous for passage, a lake or basin, or public park, square, alley or highway; or;

"(d) Shall in any way render any considerable number of persons insecure in life or in the use of property."

Plaintiff alleged that said defendants were guilty of negligence per se. She then alleged that the negligence of the city of Tulsa consisted of:

". . . permitting said nuisance to be maintained on the public streets and permitting said wire to be and remain stretched in a public place and across the public parkway over a long period of time. That the defendants O. E. Hunt, William C. Stighman and Pearl Stighman had for the past three years kept said wire stretched across the parkway at that point during all of the spring, summer and fall seasons, and that the defendant city of Tulsa knew, or by the exercise of ordinary care and diligence, through its officers, agents and servants,

should have known of the existence and maintenance of said public nuisance and dangerous and hazardous obstruction, because of the long period of time over which it had been the practice of the other defendants to maintain said public nuisance and dangerous hazard."

The city of Tulsa asserts that it was not guilty of negligence; that if it was, plaintiff was guilty of contributory negligence.

Defendant owners of the Hunt property admitted that they had sowed the parkway space to grass and stretched the wire for its protection.

The case was presented to the jury upon the theory that the wire stretched along the driveway and across the parkway space constituted a public nuisance as defined by the ordinance.

The court instructed the jury that the claim of plaintiff was that defendants, acting together, were maintaining a public nuisance under the ordinance (quoting section 2, defining a public nuisance).

The principal question here presented is the nature and extent of the duty owed by a municipality to a traveler upon its streets with respect to that portion of the street between the sidewalk and curb which it had permitted, in this instance, to be devoted to ornamentation rather than travel.

It is common knowledge that in most of the cities of this state the streets in the residential districts are so laid out that there are grass plots between the sidewalk and the building line, also between the sidewalk and the curb line, which not infrequently contain trees, flowers, or ornamental shrubs, and grass, which serve the purpose of making the street more attractive to those who live upon it or pass through it.

These areas so devoted to ornamentation are still a part of the highway and the municipality must use a reasonable degree of care with reference to their condition.

The trial court, by instruction No. 4, said to the jury:

"You are instructed that a person traveling upon a public sidewalk of a city which is in constant use by the public, while using same with reasonable care and caution, has the right to presume that such sidewalk is in a reasonably safe condition, and is reasonably safe for ordinary travel by night as well as by day throughout its entire width, and that the same is free from all dangerous holes and pitfalls.

"You are also instructed that the rule that requires a municipal corporation to exercise ordinary care, to know the condition of its sidewalks, and keep them in a reasonably safe condition for such use, is not to be confined solely to the sidewalk track, but is to be extended to dangers near or in proximity of the sidewalk."

It has often been held that the duty resting upon the city with regard to the maintenance of such areas and that resting upon a traveler upon the streets with regard to their use are quite different from those imposed upon them with regard to the untraveled portion of the area. In Corcoran v. City of New Haven et al., 108 Conn. 63, 142 Atl. 569, it is said:

"The general proposition that the public is entitled to the free use of any portion of a public street must be accepted, with the qualification that certain portions of it may for the benefit and convenience of the public be devoted to other purposes than travel. When this is done with due regard to making the traveled part of the highway adequate and reasonably safe, the result is to warn travelers to take the ways provided and to segregate the parts reserved from general travel use. Since it is not intended that there shall be travel upon such areas, objects may be maintained upon them which would be obstructions if they were upon the traveled portion of the street, and since the public are not expected to pass over such areas, they may be protected and guarded against use by travelers by suitable guards, and proper barriers for that purpose are not obstructions or nuisances if they are not maintained so as to become dangerous to travelers."

And:

"In fairness to the city this should have been followed by a statement that a portion of a city street may be devoted to other purposes than that of travel, that the city may permit the erection of barriers to prevent travel across such areas, and that such barriers do not constitute defects in the highway if they are not maintained so as to be dangerous to travelers, and that this wire was stretched along the curb to prevent people from crossing the grass plot where they were not intended or expected to pass. The distinction between that situation and an obstruction or defect in the traveled portion of the street or sidewalk is one which the city was entitled to have brought to the attention of the jury. The failure to do so must be deemed to have been prejudicial to it."

In Schramm et ux. v. City of Pittsburgh et al., 337 Pa. 65, 9 Atl. 2d 373, it is said:

"A city may set aside portions of streets or sidewalks for grass plots, and, if it does so, must maintain the plots so that they will not present an unreasonable risk of harm to pedestrians, guarding against hazardous conditions that may reasonably be expected to lead to injury, but the duty is different from that imposed with respect to traveled portions of street or sidewalk, and no liability can arise from uses and conditions which are customary and permissible though involving some slight element of danger."

To the same effect is Teague v. City of Bloomington, 40 Ind. App. 68, 81 N. E. 103.

In Dougherty v. Trustees of Village of Horseheads, 159 N. Y. 154, 53 N. E. 799, it is held:

"A line of shade trees parallel with a street was terminated by a driveway running into the street. To protect a tree three feet from the driveway from injury by teams, a boulder the size of a bushel basket was placed a short distance from a depression that separated the driveway from a grass plot in which

the trees were standing. A cutter was driven against the boulder while it was covered with snow, and a passenger therein was injured. Held, insufficient to show the village guilty of negligence."

In Emory v. City of Rome, 54 Ga. App. 469, 188 S. E. 358, it is said:

"Here the defect which caused the plaintiff's injury was not only a slight one, but a defect, not on a sidewalk, but on a grass parkway adjacent to a sidewalk, and presumably where the public were not expected to walk. Under these circumstances, should the city, in the exercise of reasonable diligence, have anticipated or foreseen that some person might leave the safe and paved sidewalk and walk upon the grass parkway and be injured by stumbling over the slight defect thereon? We do not think that such a burden should be put upon the city."

In Dargatz v. Dodge City, 151 Kan. 747, 100 P. 2d 680, the court said:

"It is well settled that the city is not held to the same degree of care as to the parking that it is in regard to sidewalks and crosswalks."

The instructions as a whole told the jury that the city was held to the same degree of care with regard to the parkway space as it was with regard to the sidewalk or space set aside for travel.

Moreover, by instruction No. 5, the trial court told the jury that in considering whether the sidewalk in question was at the time alleged by plaintiff in such reasonably safe condition, it might take into consideration all the physical conditions of the street and might consider the location and condition of the sidewalk, the location of the wire, the street level, and, in fact, all of the physical conditions which would show whether this part of the street was or was not in a condition reasonably safe for ordinary travel.

It may be noted that there is no contention and no evidence that plaintiff, at the time she was injured, was using or walking on the sidewalk. The instructions as a whole so clearly connect the sidewalk, and the duty of the city with respect thereto, to the parkway, and the duty in respect thereto, as to clearly indicate to the jury that the degree of care required of the city with regard to the parkway was the same as with regard to the sidewalk.

All the courts where the question has been raised hold that the duty with regard to maintenance of grass plots is quite different from that imposed with regard to the traveled portions of the street or sidewalk. It has been said that no liability can arise from the uses and conditions which are customary and permissible in such areas, even though they may involve some slight elements of danger. Schramm et ux. v. City of Pittsburgh et al., supra. That to hold a city to the same degree of care as to parkway space that is required as to sidewalks would place a burden upon cities with which they would be unable to cope. Dargatz v. Dodge City, supra. As stated above, it is common knowledge that in nearly all the cities of this state, the streets in residential sections are so laid out as to provide parkway space between the lot line and the sidewalk and between sidewalk and curb. Property owners are expected to improve and beautify such spaces, and as a matter of civic pride they should be encouraged to do so. To this end they should be, and as we view the law they are, entitled to plant such plots to grass, trees, and shrubbery in order to make the streets attractive. Cities should permit property owners to protect the grass, shrubbery, etc., from destruction by trampling feet of pedestrians where ample sidewalks have been constructed. Sidewalks are laid at the expense of the abutting lot owners. When lot owners, at their own expense, provide ample sidewalk space for the traveling public, it is reasonable that they be permitted to use and beautify the parkway space and protect it with reasonable barriers without being called upon to answer in damages to the pedestrian who leaves the space provided for their safe and convenient travel and go upon the parkways, unless the fence or barrier is so

constructed as to be a menace and obvious danger to the pedestrian while using the sidewalk. Such a structure is not per se a public nuisance. It is not a nuisance unless so constructed as to endanger travelers upon the street or sidewalk while using the ways provided for travel, though they may involve some element of danger to those travelers who choose to leave the paved portion of the street or the sidewalk and go upon the parkway space.

The defendant city of Tulsa contends that the court erred in refusing a requested instruction whereby it asked the court to instruct the jury that a pedestrian using a street or sidewalk is but a licensee who makes use of a sidewalk for his own pleasure or benefit, and that the city, in the exercise of ordinary care, owes no duty other than not to willfully or wantonly cause such licensee any injury, etc.

In this connection we are cited to Atchison, T. & S. F. Ry. Co. v. Cogswell, 23 Okla. 181, 99 P. 923, and other similar cases. They have no application. They are cases involving spaces used for travel on privately owned property. We are cited no case which holds a traveler upon a public street or highway to be a licensee.

"The right to travel on and along the streets of a municipality applies to the general public and not to its citizens alone; it is an inherent and inalienable right of every citizen of the state, which neither the state nor municipality can take away or unreasonably abridge, and which may only be controlled by reasonable regulation." 44 C. J. 1026, par. 3867.

There was no error in refusing the requested instruction.

For the errors pointed out in the instructions given, and omission of the duty to properly instruct the jury, judgment is reversed and the cause remanded for a new trial consistent with the views herein expressed.

All the Justices concur, except WELCH, C. J., absent.