AMBROSE C. KINGSLAND, Respondent, v. LUCIUS E. CHITTEN-
DEN and others, Appellants.

6   15
132a 497

(GENERAL TERM, SECOND DEPARTMENT, 1872.)

A line given in a deed as running from one monument to another, is, in
the absence of further description, presumed to be a straight line.

The rule which carries land, bounded upon a stream or pond, to the middle
thereof, applies only where the grant is in terms bounded on the stream
or pond generally.

It is founded on the presumed intent of the grantor, and can never be
applied when the presumption is repelled by the language of the grant.

A map made for the owner of an entire tract, and referred to in the deeds
of parcels thereof, is admissible evidence between the subsequent grantees
upon a question as to their boundaries.

THIS was an appeal by the defendant from a judgment for
the plaintiff upon the report of a referee.

The action was ejectment to recover lands in the
defendants' possession. The defendants answered jointly,
denying the complaint and claiming ownership of the pro-
perty described therein.

Plaintiff and defendants traced their titles to Gerard R.
Beekman, as owner of an entire tract, from whose executors,
by intermediate conveyances, it had been granted to one
Storm, who had granted portions to the plaintiff and defend-
ants respectively.

It appeared upon the trial that, while the entire tract of
land which contained the lands granted by Storm to the
plaintiff and defendants respectively was owned by the
estate of Gerard R. Beekman, a survey had been made by
one Carpenter, a surveyor in the owner's employ, and a line
dividing an artificial mill-pond, formed by a dam in the
Pocantico river, into two equal parts, had then been located
and laid down on a map of the tract made for the Beekman
estate; that this map was subsequently used in the office of
that estate, and was there made accessible to persons desi-
rous of purchasing therein, and that it was accessible to and
examined by one Francis Core and Gerard R. Beekman, who

became purchasers of one portion, and an agent acting for Ann Warner who became purchaser of another portion of the tract, and that the dividing line through the tract, as laid down on the map, had in fact been established at the suggestion of these respective grantees from the Beekman estate, to enable them to purchase their respective portions on each side of such line.    The map and evidence of the survey and location of the line were received under objection as to materiality and competency and exception by the defendants.

The plaintiff then deduced title through Core and Gerard R. Beekman and one Cramer to Storm, and from Storm to himself, of one portion of the premises, being the north half thereof.    The plaintiff's deed bore date May 1st, 1863, and contained a description of the premises conveyed and covenants, which are referred to and explained in the opinion of the court.

It appeared, from the evidence of the defendants' witnesses, that the channel or thread of the Pocantico river ran considerably more to the southward than the line laid down on the map as the dividing line through the pond, though in the same general direction, and that, following the course of the channel of the river as a boundary, the quantity of land belonging to the plaintiff under his deed would be increased. It was also shown by the defendants that, after Storm became owner of the property, and before conveyance to the plaintiff, he filled up a portion of the pond, on the north side, to the extent of half an acre thereof, and thus changed the outline of the pond.    The dispute between the parties regarded the true location of their dividing line through the pond.

*L. E. Chittenden,* for the appellant, cited *King* v. *King* (7 Mass., 495); *Wells* v. *Jackson Iron Co.* (47 N. H. Rep., 236); *Peaslee* v. *Gee* (19 id., 126); *Nutting* v. *Herbert* (35 id., 126); *Greenleaf* v. *Kitton* (11 id., 530); *Bradley* v. *Nilson* (58 Maine, 359); *Comstock* v. *Van Deusen* (5 Pick., 163); *Child* v. *Starr* (4 Hill., 369); *Jackson* v. *Tile* (11 John., 212); *Lovell* v. *Robinson* (16 Me. R., 357); *Bradley* v. *Rice* (13 id., 198); *Hathorn* v. *Stinson* (3 Fairf., 181); *Hatch* v.

*Carpenter* (75 Mass., 269); *Fletcher* v. *Phelps* (28 Vt., 262);
*Pratt* v. *Samson* (84 Mass., 285); *Trustees* v. *Dickinson* (9
Cush., 544); *McCulloch* v. *Wall* (4 Rich. S. C., 68); *Sizer* v.
*Devening* (16 Barb., 160); *Ex parte Jennings* (6 Cow., 536,
note); *Marsh* v. *Burt* (34 Vt., 39); *Riley* v. *Griffin* (16
Georgia, 141); *Den* v. *Wright* (1 Pet. C. C. Rep., 71); *Jones*
v. *Holstein* (47 Barb., 311); *Berridge* v. *Ward* (10 Com.
B. R. [N. S.], 400); *Simpson* v. *Dendy* (8 Com, B. R.
[N. S.], 433); *Lord* v. *Com. of Sidney* (12 Moore P. C.
Cas., 473); *Cox* v. *Fredley* (33 Penn. St. R., 124); *Demeyer*
v. *Legg* (18 Barb., 14); *Herring* v. *Fisher* (1 Sanf., 344);
*Hammond* v. *McLachlan* (id., 335); *Luce* v. *Carley* (24
Wend., 457); *Jackson* v. *Lown* (12 John., 252); *Seneca
Indians* v. *Knight* (23 N. Y., 498); *Dunham* v. *Williams*
(36 Barb., 155); *Adams* v. *R. R. Co.* (11 id., 417); *Morgan*
v. *King* (35 N. Y., 459); *Waugh* v. *Waugh* (28 id., 94);
*Clark* v. *Wethey* (19 Wend., 320); *Lowell* v. *Robinson* (16
Me., 357); *Peaslee* v. *Gee* (19 N. H., 126); *Nutting* v. *Herbert* (35 id., 126); *Cook* v. *Comley* (39 id., 595); *Claremont*
v. *Carleton* (2 id., 369); *Thayer* v. *Bacon* (3 Allen, 163);
*Allen* v. *Kingsbury* (16 Pick., 235); *Comstock* v. *Van Deusen*
(5 Pick., 163); *King* v. *King* (7 Mass., 495); *Trustees* v.
*Dickenson* (9 Cush., 544); *Marsh* v. *Burt* (34 Vt., 29);
*Russel* v *Maloney* (39 id., 578); *McCullock* v. *Vail* (4 Rich.
S. C., 68); *Fralt* v. *Woodward* (32 Cal., 219); Smith's Lead.
Ca., 11; Hare and Wallace, Notes, 226); *Riley* v. *Griffin* (16
Ga. R., 141); *Den* v. *Wright* (1 Pet. C. C. R., 71).

*J. W. Tompkins,* for the respondents, cited Washburn on
Real Property, 672; *Bradley* v. *Rice* (13 Me., 201; 13
Pick., 261); *Stanley* v. *Green* (12 Cal., 162).

Present—BARNARD, P. J., GILBERT and TAPPEN, JJ.

By the Court—GILBERT, J. The determination of this
case depends upon the construction which shall be given to

the deed from Jacob Storms and wife to the plaintiff, dated May 1, 1863. The only subject in dispute is the south-eastern boundary described in that deed, the description of which is as follows: " Thence south to the center of the mill creek or Pocantice river, thence easterly along the center of said creek or river to the present mill-dam at the center thereof, thence through the center of said mill-dam and the center of the mill-pond to the late Highland turnpike road." The deed also conveys the lands covered by the waters of that portion of said mill-pond thereby conveyed, as the same were conveyed to the said Jacob Storms and others by Francis Core and wife by deed, dated January 21, 1856. The deed from Storms and wife to the plaintiff is executed by the grantee as well as the grantors, and contains the following covenant: " And the said party of the first part hereto does covenant and agree for himself, his heirs and assigns, that he nor they will not at any time hereafter encroach upon the south-easterly half of said pond still owned and retained by him, by walling, filling up or otherwise, but that there shall be preserved at all times in said south-easterly half of said pond a water surface equal to the surface hereby conveyed to the said party of the second part; and the said party of the second part does hereby in like manner covenant that he will not at any time in anywise encroach upon the north-west half of said pond hereby conveyed to him, but that the water surface therein shall at all times remain equal to the water surface in the south-east half of said pond." The only difficulty in the case arises from the omission in the deed of any words pointing out the course of the line running through the pond, and the spot where that line meets the Highland turnpike road. These particulars not being in terms defined by the deed must be ascertained by applying the rules governing the interpretation of such instruments, which are these: If the language of the instrument is susceptible of more than one construction, the intent of the parties to be collected from the whole instrument must govern; and, in order to ascertain that intent. the court may take into consideration the extrinsic

circumstances attending the transaction, the situation of the parties and the subject-matter of the instrument. This is the established rule of the common law, and in respect to conveyances of real estate has been declared by statute. (*French* v. *Carhart*, 1 Comst., 102; 1 R. S., 748, § 2.) No evidence to contradict the instrument can be admitted, but evidence for the purpose of explaining it is sometimes admissible.

Where a line is given in a deed as running from one monument to another, it is always presumed to be a straight line, unless a different line is described in the deed, so that by ascertaining the monuments at the angles of a parcel of land, the boundary lines can at once be determined. (*Allen* v. *Kingsbury*, 16 Pick., 238, 239; Wash. R. P., 631.) In this case the deed to the plaintiffs calls for a line running from the center of the mill-dam through the center of the mill-pond to the road. The direction of this line will be fixed when it is ascertained what is meant by the words " through the center of the mill-pond," and when fixed will determine whether the *locus in quo* is embraced within it or not. We think the deed itself furnishes evidence which makes it reasonably certain that the parties intended a line which should divide the water surface of the pond, as it was when Core was the owner, equally. The grantors convey the lands under water as the same were conveyed to them by Core and wife, and the parties mutually covenant in substance that an equal water surface shall always be preserved on each side of said line. The conveyance from Core and wife to Storms was made seven years before the deed to the plaintiff. Any change in the pond, produced while Storms was the owner, therefore, cannot affect his grant to the plaintiff. The line in question is described in both deeds in the same language. The deed from Core and wife to Storms also conveys the lands covered by the portion of the mill-pond thereby conveyed. It furthermore recites an agreement between the parties that the grantors are to sell " the *other* and southerly *half* of said mill-pond," and contains a mutual covenant that the owner of each *half*

of the mill-pond shall bear one-half of the expense of main
taining the dam, and shall use only *one-half* of the
water of the pond. The deeds under which the defend
ants claim title all contain corresponding provisions
and covenants with respect to the northerly half of the pond,
and are made in terms subject thereto. It would be extremely
difficult to reconcile the language used in these deeds with
any different construction than that which we have expressed.
The correctness of this construction is also shown by the
map and survey put in evidence, showing the actual location
of the line through the pond. This map was made for, and
is mentioned in the deeds of the respective parcels from, the
former owner of the whole premises under which the plaintiff
and defendants respectively derive their title, and, we think,
was properly received in evidence, for the purpose of showing
the actual location of that line. "If I. S. be seized of the
manors of A. and B., and cause a survey to be taken of B.,
and afterward convey it to I. N., and after disputes arise
between the lords of the two manors concerning the bounda-
ries, this survey may be given in evidence. *Aliter* if the two
manors had not been in the same hands at the time of the
survey taken." (B. N. P., 283 ; 1 Gr. Ev., § 189; *Bridgman*
v. *Jennings*, 1 Ld. Raym., 734; *Doe dem. Hughes* v. *Lakin*,
7 C. & P., 481.)

The rule contended for by the counsel for the defendants,
that a grant of land bounded upon a stream extends to the
middle thereof, has no application to this case. That rule can
be applied only when the grant is in terms bounded upon the
pond or the stream which runs through it generally. In such
a case, it will be extended to the center or thread of the stream.
But such rule, being founded upon the presumed intention of
the grantor, can never, even in such a case, be applied when
such presumption is repelled by the language used in the con-
veyance. (*Child* v. *Starr*, 4 Hill, 373 ; *Herring* v. *Fisher*, 1
Sand. S. C. R., 348; id., 323; *Bissell* v. *N. Y. C. R. R. Co.*, 23
N. Y. R., 64 ; *Bradley* v. *Rice*, 13 Me., 201.) In the case before
us, as we have seen, there is no boundary on the pond generally,

but the line through the pond is to run straight from the dam to the road, and necessarily excludes any intention of the grantor that it should follow the course or channel of the stream. Such, evidently, was the view of the subject taken by the defendants themselves, at the time the deeds to them respectively were made, for in those deeds the line through the pond is in terms described as a straight line. The evidence shows that the line established by the referee is in accordance with the construction which we have given to the deed to the plaintiff, or at least that such line does not encroach on the southerly half of the pond. It cannot be doubted that it was competent to prove this fact by parol evidence. (1 Gr. Ev., § 301.) It is, therefore, immaterial whether the referee was right or wrong in admitting the parol testimony to which the defendants objected, or in the process of reasoning by which he formed his conclusions upon the whole evidence; for such errors are only presumptively injurious, and when it appears on an examination of the whole case that the result ought to have been the same if the errors had not been committed, the errors furnish no ground for reversing the judgment. (*People v. Gonzalez*, 35 N. Y., 59.)

The judgment therefore must be affirmed, with costs.

Judgment affirmed.