BRAININ v. NEW YORK, N. H. & H. R. CO. et al.

(Supreme Court, Appellate Division, Second Department.   January 21, 1910.)

1. DEEDS (§ 112*)—INSTRUMENTS FORMING PART OF DEED—CONSTRUCTION.

Where a deed of lots describes them by their numbers on a specified map, which map bounds and describes the lots by giving their depth from abutting street line to the center of a stone wall on the side of a railroad right of way, the map is a part of the deed, and controls the description in the deed, so that an explanatory note on the map, stating that the lots adjoining the right of way are bounded by the correct line of the right of way, wherever the line may be, and that the depths of the lots given on the map are the distances from the street to the center of a stone wall standing on the southerly side of the right of way, etc., shows that the deed conveys only to the southern boundary line of the right of way, wherever that may be.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 323, 324; Dec. Dig. § 112.*]

2. ADVERSE POSSESSION (§ 100*)—CONSTRUCTIVE POSSESSION—COLOR OF TITLE.

Where the deed of lots adjacent to a railroad right of way did not purport to convey a strip claimed by the railroad as a part of its right of way, the grantee could not avail himself of the constructive possession of the strip, arising from the occupation by himself and his predecessors in title of the dwelling house on the front of the lots.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 557–559; Dec. Dig. § 100.*]

3. ADVERSE POSSESSION (§ 27*)—ACTUAL POSSESSION—EVIDENCE.

One began in 1883 an adverse possession of a strip by the erection of fences and a stable, which continued until 1888, when the building was burned, and he abandoned the premises. His grantee never took possession, and no one actually occupied the premises until 1892, when a purchaser from the grantee took possession and rebuilt the fence.   He died in 1895, and his executors conveyed to a third person in 1906. Neither of the deeds transferred any possessory right to the strip which was claimed by the adjacent owner, for they conveyed land extending only to the line of the adjacent landowner.   When the third person purchased, the land was not inclosed, cultivated, or improved.   *Held* not to show an actual, continued occupation by the third person and his predecessors of the strip for 20 years.

[Ed. Note.—For other cases, see Adverse Possession, Dec. Dig. § 27.*]

Appeal from Trial Term, Westchester County.

Action by Eda Brainin against the New York, New Haven & Hartford Railroad Company and another.   From a judgment for plaintiff, defendants appeal.   Reversed, and new trial granted.

Argued before HIRSCHBERG, P. J., and WOODWARD, BURR, THOMAS, and RICH, JJ.

Wm. A. Woodworth, for appellants.
David B. Ogden, for respondent.

RICH, J.   Both the plaintiff and the defendant railroad company claim ownership of a piece of land over which the latter permitted its codefendant to place poles and string wires and cables.   The New York & New Haven Railroad Company was originally laid out in 1847, at which time there was conveyed to it, by one Davenport, a piece of land 11 chains 58 links in length, of the average width of 1 chain 10

links. The law then in force required the company to fence its right of way, and a stone wall yet standing, on the east side of said premises, is I think beyond question the fence erected by the company in conformity with the law, and marked the then south boundary of its right of way. In 1851 the railroad company double-tracked its road, and on March 1st of that year purchased from its former grantor an additional strip of land about 50 rods in length, bounded on the south by a line parallel with the center line of the rails, as then laid, and 3 rods therefrom. The land so purchased includes the strip in dispute, which is 100 feet in length along the railroad, and its southerly line 5 feet south of the stone wall at its east end, and 8 feet south of it at its west end. The locus in quo lies at the rear of two lots owned by the plaintiff, fronting on Oak street, and her contention is based on an alleged title and right of possession founded on a series of deeds running back to Davenport, the common source of title, and by adverse possession under claim of title. All of the deeds introduced in evidence by the plaintiff, including the one to herself, describe the land as being two lots—

"known and distinguished on a map of property of Frederick Lorenzen surveyed by Horace Crosby, C. E., Jan., 1876, and March, 1879, and filed in the Westchester county register's office March 3, 1879, by the numbers 12 and 13, which said lots taken together are on said map bounded and described as follows, viz.: Beginning at a point on the northerly side of Oak street, adjoining other lands of Frederick Lorenzen; thence running in a westerly direction along the northerly side of Oak street one hundred feet; thence in a northwesterly direction by and along the lands of one Daly one hundred and forty-nine feet and forty-two hundredths of a foot (149.42/100) to land of the New York, New Haven & Hartford Railroad Company; thence in an easterly direction along the lands of said railroad company one hundred feet and sixteen one-hundredths of a foot (100.16/100) to other lands of said Frederick Lorenzen; thence along said other lands of said Frederick Lorenzen in a southeasterly direction one hundred and fifty-five feet and eighty-three one-hundredths of a foot (155.83/100) to Oak street, the point and place of beginning."

The map referred to in the deeds was introduced in evidence, and shows lots 12 and 13, taken together, as being of the same dimensions stated in the deed, and extending from Oak street to the center of the stone wall referred to. On the map is the following explanatory note:

"Explanatory Note. All the lots adjoining the N. Y., N. H. & H. R. R. are bounded on the north by the correct southerly line of the said railroad company's land, according to the deeds of the latter, wherever the said southerly line may be. The lengths or depths of the said lots given on this map are the distances from the north side of Oak St. to the center of the stone wall now standing on the southerly side of and running in the same general direction as the tracks of the said railroad, excepting for lots 16, 17 and 18 the depth of which do not quite reach the stone wall. The correct lengths or depths of all the lots between the railroad and Oak St. may therefore be either more or less than is laid down upon this map; and this explanatory note is hereby intended to be made a part of the description of each and every one of the aforesaid lots. H. C. March 31, 1879."

Lorenzen testified that when he had the survey and map made he did not know where the railroad line was; and the surveyor, Crosby, testified that he did not then know exactly where the southerly line of the railroad was. He says:

"That was the reason the note was put on the map." There was a stone fence that seemed to mark the division line between the lots and the railroad. "I measured to the stone wall, and after the map was made, before it was filed, I was informed that the railroad company had bought an additional strip from Davenport, and I put this note on the map to repair any discrepancy between that stone wall and the southerly line."

The map must be taken as part of the deeds, and controls the description. Kingsland v. Chittenden, 6 Lans. 15. The lengths of the side lines, stated in the deeds of the plaintiff and her predecessors in title, are not of importance in determining the rear line of plaintiff's lots, and are not the determining factor as to which is the precise location of the southerly boundary line of the railroad land. There is no reasonable doubt that the intent of the parties to these several deeds was to convey and take title, not to the center of the stone wall, but to the southerly boundary line of the railroad land, wherever that might be, and such intent is made clear by the explanatory note on the map, which is made a part of the description of each and every lot. Benjamin v. Welch, 73 Hun, 371, 26 N. Y. Supp. 156; Ousby v. Jones, 73 N. Y. 621; Higinbotham v. Stoddard, 72 N. Y. 94, 99; Walter v. Ham, 68 App. Div. 381, 383, 75 N. Y. Supp. 185; Brookman v. Kurzman, 94 N. Y. 272, 276. The plaintiff gave no evidence of the location of this south boundary line. The defendant railroad company introduced in evidence its deeds, and proved without contradiction, by two surveyors, one of whom was Crosby, who made the map and survey for Lorenzen, that the southerly line of the railroad land, in the rear of plaintiff's lots, was between 5 and 8 feet south of the stone wall, and therefore included the strip in dispute.

The record discloses a failure on the part of the plaintiff to establish that she owned the locus in quo in fee, or that she had any title by adverse possession, under claim of title founded on the several deeds she put in evidence, for the reason that such deeds do not purport to convey the strip of land in dispute, and she cannot avail herself of constructive possession arising from the occupation by herself and her predecessors in title of the dwelling house on the front of the lots. Pope v. Hanmer, 74 N. Y. 240. She also failed to establish adverse possession under claim of title. The evidence does not show an actual, continued occupation for 20 years. McCarty began an adverse possession in 1883 by the erection of fences and a stable, which continued until 1888, when his house burned down and he abandoned the premises. The grantee, Barton, never took possession. No one actually occupied the premises from 1888 to 1892, when Hayes, Barton's grantee, took possession and rebuilt the fence. He died in 1895, and his executors conveyed to the plaintiff in 1906. Neither of their deeds transferred any possessory right to the strip of land in question, for they conveyed only lots 12 and 13, extending from Oak street to the southerly line of the railroad lands, and did not assume to convey the disputed strip or any rights therein. When plaintiff purchased, the land was not inclosed, cultivated, or improved. Smith v. Reich, 80 Hun, 287, 30 N. Y. Supp. 167; Sawyer v. Kendall, 10 Cush. (Mass.) 241; Simpson v. Downing, 23 Wend. 316; Cleveland v. Crawford, 7 Hun, 616; Jackson v. Leonard, 9 Cow. 653. There is no evidence

of any assertion of claim of title by any of plaintiff's predecessors, and their acts were with the knowledge given them by the map, and as matter of law part of their conveyances, that the correct southerly line of the railroad land as shown by its deeds, and not the stone wall, was their north boundary line. Humbert v. Trinity Church, 24 Wend. 587.

The evidence furnishes no foundation for the contention of a practical location of the stone wall as a boundary line. The case was not tried upon that theory, nor was such question raised or urged on the trial.

Judgment reversed, and a new trial granted; costs to abide the event. All concur.