### BORZILLERI v. JANES et al.

(Supreme Court, Equity Term, Monroe County. January 31, 1916.)

1. ADVERSE POSSESSION ⟨⊜⟩13—PROOF REQUIRED.

Where plaintiff's claim to land by adverse possession was not founded on record title, it was incumbent on him to show 20 years' actual continued possession by him or his predecessors in title under claim of title, and to the exclusion of any other claim of right, and that the land so oc-

cupied had been protected by substantial inclosure, or had been usually cultivated or improved, under Code Civ. Proc. § 371, defining adverse possession not founded on record title.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 65, 67–76; Dec. Dig. ☞13.]

2. ADVERSE POSSESSION ☞16—EVIDENCE—SUFFICIENCY.

Where the claim of a school district to land by adverse possession was not founded on record title, evidence that for many years the school children and any others so desiring had traveled over the land, that the land was unfenced on one side, and the fencing on the other sides was not done by the school authorities, but by the record owners, who occasionally cut weeds on the land, and that the land was never usually cultivated or improved, was insufficient to establish title by adverse possession, under Code Civ. Proc. § 371.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 82–89; Dec. Dig. ☞16.]

3. ADVERSE POSSESSION ☞50—RECORD OWNER QUITCLAIMING—RECOGNITION OF ADVERSE TITLE.

The fact that the record owner of such land, on selling it, conveyed by quitclaim, instead of warranty, deed, while conveying adjacent land sold in the same transaction by warranty deed, was not a recognition of title by adverse possession in the school district.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 255–261; Dec. Dig. ☞50.]

4. ADVERSE POSSESSION ☞50—IMPROVEMENT—LEAVING PATHWAY—ADVERSE TITLE—RECOGNITION.

The fact that the record owner, upon improving the land, made an arrangement with the school authorities to leave a pathway open across it, and provided a walk for the use of the school children, was in itself insufficient to establish the school district's title by adverse possession, since such user was at most a license permitted by the record owner, which could not ripen into title by adverse possession.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 255–261; Dec. Dig. ☞50.]

Action by J. Russell Borzilleri, as sole trustee of School District No. 8 of the Town of Brighton, N. Y., for an injunction against Frank F. Janes, the New York State Railways, and the City of Rochester. Complaint dismissed.

Edwin C. Smith, of Rochester, for plaintiff.

Harris, Beach, Harris & Matson, of Rochester (George D. Reed, of Rochester, of counsel), for defendant New York State Rys.

CLARK, J.    School district No. 8 in the town of Brighton was formed about the year 1820, it first being called school district No. 10, and subsequently it was called district No. 8, which is its present name.    The schoolhouse now being used in said district has occupied its present site for many years, and has been in constant use since 1845.    The subject of this controversy is a small triangular parcel of land located on the southeast side of the schoolhouse lot proper.    This triangular parcel formerly belonged to Gideon Cobb, it was subsequently sold by his son and heir, William H. Cobb, to Ellwanger & Barry, through whom one Fred E. Mason claims to have gotten title early in 1906.    Mr. Mason's conveyance was a quitclaim deed from the

Ellwanger & Barry Realty Company, and at the same time he purchased other adjoining property of the same company and received a warranty deed. In August, 1915, Mason executed a warranty deed to defendant Janes, conveying all of the land he had previously purchased of the Ellwanger & Barry Realty Company, including the triangular parcel in question. On the 27th day of August, 1915, defendant New York State Railways undertook to construct a loop on this triangular piece of property, which had been purchased by defendant Janes from Mr. Mason, and this action was commenced the following day.

[1] The only question to be determined here is as to the ownership of this triangular piece of land. It is not pretended, and there is no evidence to justify a finding that plaintiff has any record title to the property in question. The deed from Fisher to Gideon Cobb, in 1839 (Exhibit 15), does not include this parcel, and surely the later deed from Gideon Cobb to the school trustees, dated October 8, 1842, does not include this triangular parcel. If plaintiff has any title to the property in question, it is based exclusively on a claim by adverse possession, and in order to succeed plaintiff must establish that title by a fair preponderance of the evidence.

The Code of Civil Procedure clearly defines what constitutes title to real property by adverse possession under claim of title not written, and it is as follows:

"Where there has been an actual continued occupation of premises, under a claim of title, *exclusive of any other right*, but not founded upon a written instrument, or a judgment or decree, the premises so actually occupied, and no others, are deemed to have been held adversely." Code of Civil Procedure, § 371.

"For the purpose of constituting adverse possession, by a person claiming title, not founded upon a written instrument, or a judgment or decree, land is deemed to have been possessed and occupied in either of the following cases, and no others: 1. Where it has been protected by a substantial inclosure. 2. Where it has been usually cultivated or improved."—Code of Civil Procedure, § 372.

See Barnes v. Light, 116 N. Y. 37, 22 N. E. 441.

The plaintiff's claim not being founded on a written instrument, it was incumbent upon him to show that for at least 20 years before the commencement of this action, he or his predecessors in title had been in actual continued occupation of this triangular parcel of land, under claim of title and to the exclusion of any other claim or right, and that the land so occupied had either been protected by a substantial inclosure or that it had been usually cultivated or improved.

Now, what are the facts as established by the evidence? For many years this triangular piece of land had been open for the common use of every one who cared to travel over it, either to reach the schoolhouse, or to reach the Ellwanger & Barry property, adjoining it on the south and west. It is quite true, as claimed by plaintiff, that the Cobbs and others of defendant's predecessors in title knew all about the school children using this triangular piece as sort of a short cut to reach the schoolhouse from the highway, now known as Monroe avenue; but the evidence shows that they also knew that others, in-

cluding themselves, used this parcel whenever they cared to do so. Every one who had occasion to go over this triangular parcel, which was unfenced on the road side, did so at pleasure, and it must be assumed that all such user was in subordination to the legal title of Gideon Cobb, there being no proof of any arrangement under which the school children or any one else used the property. Code of Civil Procedure, § 368; 1 Cyc. pages 1144, 1145.

This land was never inclosed by any fence built by the school authorities, and was in fact never substantially inclosed by any one, and it was never usually cultivated or improved. Defendants' predecessors in title, both the Cobbs and Ellwanger & Barry, maintained a fence from up near the schoolhouse, running in a diagonal direction down to the old road, now Monroe avenue; but it was put there primarily to keep the school children out of the adjoining orchard. The record owners and the public generally used this strip of land, as well as the school children, when they had occasion to cross it, and the evidence shows that occasionally the record owners cut weeds that grew on this triangular parcel. So it is perfectly plain that at no time in all these years, while the school children were crossing and recrossing this parcel, did the school authorities occupy the premises under claim of title to the exclusion of any other claim or right.

The simple fact is that, aside from the many years that the school children attending Cobb's Hill school, who lived south and east of it, have gone over this land as a convenient short cut to reach the schoolhouse, the evidence utterly fails to show any facts to justify the claim that the school authorities had title to this property by adverse possession. Plaintiff and his predecessors in title never substantially inclosed it, and it was never usually cultivated or improved, and even the children did not have the exclusive use of it. It was in fact a small parcel of land left open by the owners, and used in common by them and the school children, and any one who had occasion to use it, and I can see no evidence that would justify a finding that in any particular has the proof measured up to the requirements in order to establish title by adverse possession, when not founded on a written instrument. In order to bring the case within the rule to establish title by adverse possession, there must have been a real and substantial inclosure, or the premises must have been usually cultivated or improved, and an actual, notorious, and exclusive occupation. Pope v. Hanmer, 74 N. Y. 243; Brainin v. N. Y., N. H. & H. R. R. Co., 136 App. Div. 396, 120 N. Y. Supp. 1093; 1 Am. & Eng. Enc. of Law, 827.

Much stress is laid by plaintiff upon the fact that, so long ago as 1842, a fence existed between this triangular parcel and other lands of Gideon Cobb, as shown by an old painting (Exhibit 2) of this territory, and as testified to by several witnesses. All this is quite true; but it is equally true that the primary purpose of that fence was to keep the children out of the orchard, and it was erected and maintained, not by the school authorities, but by the owners of the adjoining land. The situation, so far as Gideon Cobb's relation to the use of

this parcel by the school children is concerned, is well stated by counsel for plaintiff when he says in his brief at page 11:

"It is certain, then, that for at least 22 years Gideon Cobb *allowed* the pupils of school district No. 8 to use the whole of this triangular parcel of land without objection on his part."

It is also true, as established by the evidence, that the school children did not use this parcel of land to the exclusion of others. On the contrary, it was unfenced on the road side, and the Cobbs and their successors in title, and the public generally, used this parcel as well as the school children in order to reach adjoining lands. Perhaps the school children, in going to and from the schoolhouse, used it more than any one else; but that they had the exclusive use of it is not established by the evidence.

[2] Much is claimed by plaintiff because the Ellwanger & Barry Realty Company, when they conveyed this property to Mason, executed a quitclaim deed, whereas on the same day they conveyed to him other adjoining lands by warranty deed. That fact in and of itself does not justify the claim that they recognized any title in the school district. It was well known that this triangular parcel had been lying open for many years, and had been used by people generally in going to and from adjoining property. The other lands which were conveyed the same day by warranty deed had always been substantially inclosed and cultivated. The grantors might well have suspected that some question would arise as to the right of the public generally to use a parcel of land which had been left open as a common for so many years, and they quite naturally declined to put themselves in a position where they might be called upon to defend the title if any such claim was ever made.

[3] The fact that Mr. Mason, before he improved the land in question, saw the school authorities and had some arrangement with them by which the children were to be permitted to continue to cross this parcel, and he made provision therefor by way of a path or sidewalk, seems more significant, for it would indicate that he at that time recognized that the school children had some rights there in going to and from the schoolhouse, but that fact would not be sufficient to establish title in plaintiff by adverse possession, when it so plainly appears that the conditions necessary to be established in order to assert title by adverse possession are lacking as in this case. It is the fairer inference that Mr. Mason knew that the children had been going over this parcel for many years, and he had no desire to deprive them of this privilege, and was willing to permit them to continue to do so as in the past, only over a well-defined path which he would make.

[4] It is my conclusion from the evidence in this case that no adverse possession has been established that would warrant plaintiff's claim of title as against the true owner. The school children were permitted to use this land in going to and from the schoolhouse, but that permission not being exclusive, and the lands never having been substantially inclosed or usually cultivated or improved by plaintiff, it is clear that such user would never ripen into title by adverse possession. The use that the school children made of this property was

permitted by the true owner; it was at most a license, which could not, and did not, ripen into a title by adverse possession. That being so, plaintiff must fail, and the complaint must be dismissed, with costs.

Findings may be submitted, and judgment is directed accordingly.